Anthony CARACCIOLO, Appellant,

v.

Joanne CARACCIOLO, Appellee.

No. 04–06–00208–CV.

Court of Appeals of Texas, San Antonio.

May 9, 2007.

Jay Robert Brandon, Law Office of Jay Brandon, San Antonio, for appellant.

Gary A. Beahm, Gary A. Beahm, P.C., San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, STEVEN C. HILBIG, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

In this case we must determine the proper interpretation of a 1999 divorce decree that divided Anthony Caracciolo's retirement benefits stemming from his military service while married to Joanne Caracciolo. On appeal from an order attempting to clarify the 1999 decree, Anthony contends the trial court improperly calculated Joanne's share of his retirement pay and that her percentage of his retirement benefits should be valued at the date of their divorce. We agree and reverse and remand the judgment of the trial court.

### BACKGROUND

The divorce decree agreed upon by Anthony and Joanne apportioned Anthony's military retirement, stating that Joanne would receive "Fifty percent (50%) of the disposable retired pay payable because of Petitioner's service in the United States Armed Forces during that period of time

beginning on the date of marriage, 7 August 1981, and ending on the date of divorce, 5 March 1999." At the time of the divorce, Anthony was still an active duty service member. Upon receipt of her first military retirement check, Joanne disputed the amount she received. She obtained an *ex parte* order entitled "Order of Division of United States Air Force Retirement Plan." Anthony successfully moved to set aside the *ex parte* order. He also moved for a clarification order which is the basis of this appeal.

At the hearing on the motion to clarify, Anthony argued to the trial court that Joanne's share of retirement benefits should be valued at the date of their divorce and that Joanne should receive 22.7% of his military retirement pay, equal to $494 a month. Anthony derived this figure by taking into account various factors, including his base pay at the time of divorce and the amount of retirement he would have been entitled to at the time of divorce. In contrast to Anthony's interpretation of the divorce decree, Joanne first testified that she should receive exactly fifty percent of Anthony's entire retirement pay; however, she was unsure what this amount would be. As an alternative, she calculated that she should receive 36% of Anthony's retirement pay, which would be her share based on "total months married, divided by total numbers of months in service, times one half." She argued that the only reason the divorce decree mentioned the dates of their marriage and divorce was to clarify how long they had been married. She believed the decree's mention of the date of divorce should not be interpreted to limit her share of Anthony's retirement pay.

The trial court agreed with Joanne and awarded her 36% of Anthony's disposable retirement pay. The court interpreted the time periods listed in the divorce decree as guidelines for the amount of time they

were married as opposed to interpreting the date of divorce as a benchmark for limiting the amount of retirement pay Joanne should receive.

On appeal, Anthony complains that this calculation is incorrect and contends the trial court should have awarded Joanne only $494. He argues that by awarding Joanne 36% of his retired pay, the court is giving Joanne a share of his retirement pay earned for military service after the divorce, which is separate property that cannot be legally awarded to his former wife. In response, Joanne maintains that the trial judge correctly calculated her share of Anthony's retirement because the divorce decree did not include a statement specifically listing the date of divorce as the cutoff for her benefits. Additionally, she argues that because the divorce decree is a contract, the trial court cannot alter the division of property made therein, and that application of the calculations advanced by Anthony would be an alteration of the decree.

## DISCUSSION

### Division of Retirement Benefits

■ In *Taggart v. Taggart*, the Supreme Court of Texas developed a formula for determining the extent of the community's interest in military retirement benefits. 552 S.W.2d 422 (Tex.1977). The Court calculated the non-employee spouse's community interest in the employee-spouse's retirement benefits as follows: the number of months married under the plan divided by the total number of months employed under the plan at the time of *retirement*. *Id.* at 424. (emphasis added). That fraction was multiplied by the non-employee spouse's "just and right" share in the community interest as determined by the trial court and then multiplied by the value of the benefits received by the employee spouse at retirement. *Id.*

In 1983, the Texas Supreme Court issued *Berry v. Berry* and altered the *Taggart* formula by changing the fraction's denominator to the number of months employed under the plan at the time of *divorce.* 647 S.W.2d 945, 946–47 (Tex.1983) (emphasis added). Thus, retirement benefits must be apportioned based upon the value of the community's interest at the time of the divorce. *Contreras v. Contreras,* 974 S.W.2d 155, 157 (Tex.App.-San Antonio 1998, no pet.).

**Interpreting the Divorce Decree**

■ In order to determine whether the trial court used the correct formula to determine the amount of retirement pay Joanne should receive, we must first interpret the divorce decree. When interpreting a divorce decree, courts should construe the decree as a whole to harmonize and give effect to the entire decree. *Shanks v. Treadway,* 110 S.W.3d 444, 447 (Tex.2003). "[I]f the decree, when read as a whole, is unambiguous as to the property's disposition, the court must effectuate the order in light of the literal language used." *Id.* citing *Wilde v. Murchie,* 949 S.W.2d 331, 332 (Tex.1997) (per curiam). However, if the decree is subject to more than one reasonable interpretation and is therefore ambiguous, courts should apply the construction that correctly applies the law. *Shanks,* 110 S.W.3d at 447. Whether a divorce decree is ambiguous is a question of law. *Id.*

■ The divorce decree in question awards Joanne "Fifty percent (50%) of the disposable retired pay payable because of Petitioner's service in the United States Armed Forces during that period of time beginning on the date of marriage, 7 August 1981, and ending on the date of divorce, 5 March 1999." We hold that the unambiguous language of the decree awards to Joanne a percentage of Anthony's retirement benefits valued at the date

of divorce. If the parties had intended otherwise, they could have expressly enlarged Joanne's share to the value at retirement. *See Lopez v. Lopez,* No. 04–04–00277–CV, 2004 WL 2945697 * 2 (Tex. App.-San Antonio Dec.22, 2004, no pet.) (mem.op.). Because the trial court may not alter the unambiguous division of retirement benefits set forth in the decree, the clarification order cannot stand. *See Contreras v. Contreras,* 974 S.W.2d 155, 158 (Tex.App.-San Antonio 1998, no pet.); *Pearcy v. Pearcy,* 884 S.W.2d 512, 514 (Tex.App.-San Antonio 1994, no writ) (determining that a court may not alter division of property in divorce decree by clarifying provision that is not ambiguous).

In attempting to clarify the divorce decree, the trial court applied a formula like that in *Taggart.* However, the *Taggart* formula is inappropriate for apportioning Anthony's retirement benefits because it employs the date of retirement, rather than the date of divorce, as the denominator. In contrast, the decree specifies that Joanne's share of retirement benefits is for a specific time period, ending on the date of divorce. Further, the *Berry* opinion clearly instructs that retirement "benefits are to be apportioned based upon the value of the community's interest at the time of divorce." *Berry,* 647 S.W.2d at 947. The unintended effect of the trial court's ruling is that it altered the division of the community estate as set out in the divorce decree. The trial court was without authority to do so. *See* Tex. Fam.Code Ann. § 9.007(b) (Vernon 2006).

■ Our inquiry does not end here, however. Although we hold that the decree unambiguously limits Joanne's recovery of benefits to the date of divorce, we recognize that clarification is still needed in order to determine the actual numbers reflecting Joanne's interest in the retirement benefits. In that regard, the decree is not a model of clarity. When apportion-

ing military retirement benefits upon divorce, the valuation of the community's interest in those benefits "is to be based on the retirement pay which corresponds to the rank actually held by the service spouse on the date of the divorce." *Grier v. Grier*, 731 S.W.2d 931, 934 (Tex.1987).[1] The decree makes no mention of Anthony's rank at the time of divorce. However, the failure to specify Anthony's rank is not fatal to the division of military benefits as of the date of divorce. Rather, we must now determine whether the record before us contains sufficient evidence to clarify the meaning of the term: "the disposable retired pay payable because of" Anthony's service during the term of the marriage. Evidence offered to specify the amount of "the disposable retired pay" should merely clarify this term as used in the decree, not modify the decree. If there is sufficient evidence to ascertain what the "disposable retired pay" would be at the time of divorce, then under the terms of the decree, Joanne is entitled to 50% of that amount.

## Disposable Retired Pay

The calculation of anticipated disposable retired pay of an active duty service member involves certain factors which are best presented at trial. The necessary factors include: (1) the number of months married while the service member is on active duty; (2) the number of years and full months of creditable service; (3) 2½%, which represents the percentage of base pay which a service member accrues toward retirement for every creditable complete year and complete month of service; (4) the pay grade of the service member; and (5) the base pay of the service member at the service member's pay grade and longevity at the time of the divorce (also referred to as the "high 36" formula). *See* David R. McClure, *Federal Retirement Plans*, STATE BAR OF TEXAS, ADVANCED FAMILY LAW COURSE, Chapter 55.1, pg. 48 (2005), and authorities cited therein.

■ The better practice is, no doubt, to present evidence of these factors at the time of divorce and thus have all necessary information to recite a specific formula or percentage in the divorce decree. However, in the absence of proof of these factors at trial, but in the face of an otherwise unambiguous decree, proof is permitted upon a request for clarification.

## Evidence offered at clarification hearing

Anthony testified that he retired under the "high 36" plan, which was his only retirement option under federal law. He testified that under this plan, he first had to average the last 36 months of his base pay as the base line for calculating his retirement pay. He further testified that based upon his pay statements, at the time of the divorce his average base pay during the 36 months preceding his divorce was $2,241.61. He multiplied this amount by a percentage derived from the number of years he served times 2.5.[2] Since he had

1. A recommended format for division of military retirement benefits when the service member is still on active duty at the time of divorce is: "IT IS ORDERED AND DECREED that FORMER SPOUSE have judgment against and recover from SERVICE MEMBER that sum equal to [percentage awarded former spouse] times [months married active duty] / [months of creditable service upon divorce] times the disposable monthly retired pay of [a/an][pay grade] with [number of years] years [number of months] months of creditable service toward retirement, payable if, as and when received by SERVICE MEMBER." David R. McClure, *Federal Retirement Plans*, STATE BAR OF TEXAS, ADVANCED FAMILY LAW COURSE, Chapter 55.1, pg. 45 (2005).

2. Anthony explains in his brief that 10 U.S.Code § 1401 states that "a service member who retires before twenty years of service can compute his retirement pay at 2.5% per year of service." Since the divorce occurred before he had completed twenty years of service, he employed this statutory formula.

served in the military for 17.5 years at the time of divorce, the result was 44%. He thus multiplied $2,241.61 by 44%, computing a total of $986.30. To determine Joanne's share, he divided this amount in half as required by the divorce decree, which equaled $493.15. He rounded this figure up to $494.[3] All of Anthony's testimony was presented without objection.

The testimony provided by Anthony furnishes much of the information needed for the various factors that must be considered in determining the "disposable retired pay payable" due to Anthony's service during the term of marriage. Accordingly, Anthony has established his entitlement to a clarification in accordance with this uncontroverted evidence.

We are mindful of Joanne's assertions that (1) the decree is contractual and thus binding; (2) the terms of the decree were never appealed and thus res judicata bars any new terms; and (3) the federal laws relied upon by Anthony were never introduced into evidence or recited in the decree. In light of our holding that the decree unambiguously limits Joanne's share of retirement benefits to those earned up until the time of divorce, there is no breach of the contract and no res judicata bar occasioned by Anthony's contentions. Further, we are unaware of any requirement that litigants must actually introduce into evidence the actual statutes upon which they rely.

### CONCLUSION

Because we hold the divorce decree unambiguously awards Joanne retirement benefits based on Anthony's disposable retired pay as of the date of divorce and not as of the date of retirement, we reverse the trial court's clarification order. Although Anthony testified to many of the factors necessary to determine the specific

amount of Joanne's award, questions still remain regarding the cost of living allowances and how those are to be awarded. Accordingly, the judgment of the trial court is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

---

**3.** As an alternative, Anthony also converted this amount to a percentage of his total retirement, ostensibly to protect Joanne's interest in cost of living allowances.