**Kyle Edward HICKS, Appellant,**

**v.**

**La'Kesha Marie Haynes HICKS, Appellee.**

No. 14–10–00577–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 30, 2011.

James N. Higdon, San Antonio, for Appellant.

William Leslie Shireman, Houston, for Appellee.

Panel consists of Chief Justice HEDGES and Justices SEYMORE and BOYCE.

## OPINION

ADELE HEDGES, Chief Justice.

In this divorce case, Kyle Edward Hicks ("Husband") complains of errors in a domestic relations order and in the final decree of divorce. He also contends that the trial court abused its discretion by awarding appellee, La'Kesha Marie Haynes Hicks ("Wife"), attorney's fees and expenses in the order denying Husband's motion to correct or reform the judgment. We affirm the final decree of divorce and the award of attorney's fees and expenses. We reverse and remand the domestic relations order for further proceedings consistent with this opinion.

### I. BACKGROUND

In November 2009, Wife filed an original petition for divorce. In December 2009, Husband filed an original answer and an original counter-petition for divorce. In January 2010, the parties entered into an informal settlement agreement pursuant to section 6.604 of the Texas Family Code. In March 2010, the trial court signed the final decree of divorce, which was approved and consented to as to both form and substance by Husband and Wife, after Husband filed a motion for the trial court to do so. On the same day, the trial court signed the domestic relations order ("DRO") at issue, approved by only Wife and her attorney. References to the DRO are crossed out in the final decree of divorce. One deleted reference in the final decree under "Property to Husband" is initialed by "CB" and "LH," presumably Wife and her attorney; another deleted reference under "Property to Wife" is initialed by "CB" only.

In April 2010, Husband filed a motion to correct or reform the judgment, complaining about errors in both the final decree of

divorce and the DRO. Husband also requested sanctions against Wife, her attorney, and/or their expert for allegedly misrepresenting the applicable federal law to the court, and Husband requested trial and appellate attorney's fees, expenses, and costs. Wife filed a response to the motion to correct or reform the judgment, stating that the motion was groundless and brought solely for the purpose of harassment. In addition, she requested trial and appellate attorney's fees, expenses, and costs. Wife filed a separate motion for sanctions pursuant to Rule 13 of the Texas Rules of Civil Procedure, claiming that Husband's motion to correct or reform the judgment was groundless and brought for the purpose of harassment. She requested as sanctions (1) that the trial court deny the motion to correct or reform the judgment and (2) that she be awarded attorney's fees and expenses incurred in obtaining an order for sanctions.

The trial court held a hearing on Husband's motion to correct or reform the judgment and on Wife's request for attorney's fees in her response.[1] The trial court denied Husband's motion and ordered Husband to pay Wife's attorney's fees and expenses in the amount of $1,950.00. After the hearing, with the trial court's permission, Husband's trial counsel introduced expert testimony regarding the calculation of and the community interest in his military retirement pay.[2] This appeal followed.

## II. ANALYSIS

### A. DOMESTIC RELATIONS ORDER

In his first issue, Husband contends that the trial court erred in signing the DRO because the DRO contains a formula incorrectly calculating (1) the community interest in his military retirement pay and (2) the retirement pay itself. In addition, Husband claims that the DRO designates Wife as the former spouse beneficiary of his Survivor Benefit Plan when no such designation was made in the final decree of divorce.

■■■ The parties entered into an agreed final decree of divorce. For a consent judgment to be valid, each party must explicitly and unmistakably give his or her consent. *In re Broussard*, 112 S.W.3d 827, 832–33 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding). Approval as to form and substance, standing alone, does not transform a judgment into a consent judgment. *Id.* The body of the judgment must suggest, for example, that the judgment was rendered by consent. *Chang v. Linh Nguyen*, 81 S.W.3d 314, 316 n. 1 (Tex.App.-Houston [14th Dist.] 2001, no pet.).

Husband and Wife attested by their signatures that they approved and consented to the divorce decree as to both form and substance. In the body of the decree, the trial court found that the parties had entered into a written agreement, the written agreement being the Final Decree of Divorce. The parties stipulated that the agreement was enforceable as a contract to the extent permitted by law. Because the parties entered into an agreed divorce decree, it is treated as a contract between the parties with the law of contracts governing the interpretation of the decree's legal force and meaning. *See Pate v. Pate*, 874 S.W.2d 186, 188 (Tex.App.-Houston [14th Dist.] 1994, writ denied).

---

1. At the hearing, Wife's trial counsel stated that she would dismiss her motion for sanctions if the trial court awarded the attorney's fees requested in her response, which the trial court did.

2. According to Husband's brief, this was done outside the presence of the trial judge.

The DRO in this case was signed on the same day as the agreed final decree of divorce. When the signing of the DRO occurs contemporaneously with the signing of the divorce decree, courts have construed the DRO as part of the divorce decree. *See, e.g., Gillin v. Gillin,* 307 S.W.3d 395, 396 (Tex.App.-San Antonio 2009, no pet.) (characterizing complaints about two provisions of an incorporated DRO as being an appeal from a divorce decree); *Beyer v. Beyer,* No. 03-06-00803-CV, 2009 WL 2341857, at * 1 (Tex.App.-Austin July 28, 2009, pet. denied) (mem. op.) (appeal from domestic relations order portion of decree). While the DRO in this case was signed on the same day as the final decree of divorce, references to the DRO are expressly deleted from the agreed decree. The trial court approved the agreement of the parties "as contained in this Final Decree of Divorce." As such, we will review the DRO as a separate order and not as part of the agreed divorce decree.[3]

■ Initially, we reject Wife's contention that Husband failed to preserve error on his issue. To preserve a complaint of error in a judgment, a party must inform the trial court of its objection by a timely filed motion to amend or correct the judgment, a motion for new trial, or some other similar method, and the trial court must rule on the motion either expressly or implicitly. *See* Tex.R.App. P. 33.1(a). Husband properly preserved error with his timely filed motion to correct or reform the judgment complaining of the incorrect calculations in the DRO and Wife's beneficiary status. The motion was denied by written order.

■ Because the trial court did not make findings of fact or conclusions of law, we assume that it made all findings in support of its judgment. *Pharo v. Chambers Cnty.,* 922 S.W.2d 945, 948 (Tex.1996). Furthermore, when findings of fact and conclusions of law are not filed, we must affirm the trial court's judgment on any legal theory that finds support in the evidence. *In re W.E.R.,* 669 S.W.2d 716, 717 (Tex.1984) (per curiam). A conclusion of law can be challenged on the ground that the trial court did not properly apply the law to the facts. *Treadway v. Shanks,* 110 S.W.3d 1, 5 (Tex.App.-Dallas 2000), *aff'd,* 110 S.W.3d 444 (Tex.2003). We review questions of law de novo. *In re Humphreys,* 880 S.W.2d 402, 404 (Tex.1994).

*Calculation of Community Interest in Retirement Pay*

The final decree of divorce awards to Wife as her sole and separate property "[a] 50% portion of the community sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to or as a result of Kyle Edward Hicks' service in the United States Air Force, including any accrued unpaid bonuses, disability plan or benefits, or other benefits existing by reason of or as a result of Kyle Edward Hicks' past or present employment." Therefore, the decree awards Wife a 50 percent portion of the community sums existing by reason of or as a result of Husband's past or present employment, including any accrued unpaid bonuses, disability plan or benefits, or other benefits. This award is consistent with the parties' informal settlement agreement which states: "Wife shall be awarded 50% of the

---

**3.** Post-divorce DROs, for example, are appealable orders. *See Shanks v. Treadway,* 110

S.W.3d 444, 446 (Tex.2003).

community interest in husband's defined military retirement pay."

Under the Uniformed Services Former Spouses' Protection Act ("USFSPA"), a divorce court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981 as marital property subject to division in accordance with the law of the jurisdiction. *See* 10 U.S.C.A. § 1408(c) (West 2010). The purpose of the DRO in this case is to direct a military service, rather than a civil pension plan administrator, to make payments out of Husband's disposable retired pay to Wife. *See id.* § 14.08(d)(1).[4] This particular DRO sets out the following formula as a calculation of the sums owed to Wife:

> Former Spouse shall receive [50 percent] of Member's Disposable Retired Pay (DRP), if, as and when received, multiplied by the following formula:
>
> Number of months Member and Former Spouse were married during which Member was in service (183 mos.) divided by Number of months Member was in service as of retirement (not greater than 480 months)
>
> X
>
> Active duty base pay for an 0–6 with 26+ years of creditable service as of 01/01/2010 ($10,047.00 per month) divided by Active duty base pay of Member as of his date of retirement

Husband contends, and we agree, that the DRO does not calculate the community sums owed to Wife in accordance with Texas law. The DRO purports to use the fraction formula established in *Taggart v. Taggart*, 552 S.W.2d 422 (Tex.1977), by dividing the number of months married during Husband's service by the total number of months Husband will be in service as of retirement. However, the *Taggart* fraction no longer applies to situations such as this one.

In *Taggart*, the Supreme Court of Texas developed a formula for determining the extent of the community's interest in a military retirement plan. 552 S.W.2d at 423–24 (holding that divorced spouse "owned as her part of the community estate a share in the contingent right to military benefits even though that right had not matured at the time of the divorce"). The Court used the following fraction when calculating the non-employee spouse's one-half interest in the employee-spouse's retirement pay: the number of months the parties were married during the employee spouse's employment divided by the total number of months of service that entitled the employee spouse to the retirement benefits.[5] *Id.* at 424.

In *Berry v. Berry*, the Court altered the *Taggart* formula. 647 S.W.2d 945, 946–47 (Tex.1983). The Court did so by changing the fraction denominator to the number of months employed under the plan *at the time of divorce. Id.* (emphasis added); *see also Shanks*, 110 S.W.3d at 447 n. 3 (Tex. 2003) (recognizing that the formula was altered). *Berry* also altered the valuation portion of the formula, requiring the value of the benefits to be calculated at the date of divorce. *Shanks*, 110 S.W.3d at 447 n. 3. Thus, the *Berry* formula prevents a

---

**4.** "Disposable retired pay" is defined as the total monthly retired pay to which a member is entitled less certain amounts as applicable. *Id.* § 1408(a)(4).

**5.** In *Taggart* the Court used the number of months of service that entitled Mr. Taggart to the retirement benefits (360 months) rather than the actual number of months of service at retirement. The Supreme Court of Texas has subsequently construed this fraction as follows: "the number of months married under the plan divided by the total number of months employed under the plan at the time of retirement." *Shanks*, 110 S.W.3d at 446 (citing *Taggart*, 552 S.W.2d at 424).

divorce court from awarding to the non-employee spouse any portion of a post-divorce increase in retirement benefits that would invade the employee spouse's separate property, such as post-divorce raises, promotions, services rendered, or contributions. *See Berry*, 647 S.W.2d at 947 (holding post-divorce increases attributable to pay raises and union-contract negotiations for an improved benefit plan are not part of the parties' estate subject to division on divorce); *Stavinoha v. Stavinoha*, 126 S.W.3d 604, 610 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (citing *Berry*). However, a divorce court may award the non-employee spouse her share of any post-divorce cost-of-living increase in the retirement benefit. *Limbaugh v. Limbaugh*, 71 S.W.3d 1, 16 n. 12 (Tex. App.-Waco 2002, no pet.).

█ Here, Husband was not retired as of the date of divorce. The DRO states that: "Member was on active duty with the U.S. Air Force at the time this Order was entered." The fraction used to calculate Wife's community interest in Husband's retired pay should follow the Berry formula. Therefore, the applicable fraction is the number of months Husband and Wife were married during Husband's employment under the retirement plan divided by the number of months Husband was employed under the retirement plan at the time of divorce. We sustain the portion of Husband's first issue dealing with the calculation of the community interest in retired pay found in the DRO. We reverse and remand for the trial court to adjust the formula in the DRO to be consistent with Texas law.

*Calculation of Retirement Pay*

Husband also contends that the formula does not accurately calculate the retired pay itself. The DRO uses the following fraction to calculate Husband's retired

pay: Active duty base pay for an 0–6 with 26+ years of creditable service as of 01/01/2010 ($10,047.00 per month) divided by Husband's active duty base pay as of his date of retirement. Husband argues that both the numerator and denominator of this fraction are incorrect.

The computation of retired pay involves factors such as: (1) the percentage of pay base that a service member accrues toward retirement for every creditable complete year and month of service; (2) the service member's pay grade; and (3) the service member's pay base at the service member's pay grade and longevity at the time of the divorce or at the time of retirement, whichever is applicable. *See Caracciolo v. Caracciolo*, 251 S.W.3d 568, 572 (Tex.App.-San Antonio 2007, no pet.). Computation of retired pay for members of the armed forces is found in chapter 71 of title 10 of the United States Code. *See* 10 U.S.C.A. §§ 1401 (computation of retired pay), 1405 (years of service), 1406 (retired pay base for members who first became members before September 8, 1980: final basic pay), 1407 (retired pay base for members who first became members after September 7, 1980: high–36 month average), 1409 (retired pay multiplier); *see also id.* § 8991 (computation of retired pay for member of the Air Force).

Husband claims that his retired pay base should be calculated using section 1407 rather than section 1406 of the United States Code because he first became a member of a uniformed service after September 7, 1980. The DRO appears to calculate Husband's retired pay base under section 1406 (retired pay base for members who first became members before September 8, 1980) because the fraction's numerator uses Husband's monthly basic pay at Husband's pay grade. *See id.* § 1406. Under section 1407, the high–36 month average is used to calculate the

retired pay base for those who first became members of a uniformed service after September 7, 1980.[6] *Id.* § 1407. "High–36 month average" means "the total amount of monthly basic pay to which the member was entitled for the 36 months (whether or not consecutive) out of all the months of active service of the member for which the monthly basic pay to which the member was entitled was the highest, divided by 36." *Id.* § 1407(c). Therefore, evidence of when Husband began uniformed service is essential to Husband's argument that the "high 36" formula should be used to calculate his retired pay base. The existing formula in the DRO references "26+ years of creditable service as of 01/01/2010." This reference indicates that Husband had 26 years and some months of creditable service in the military as of 01/01/2010.[7] Based on the reference in the DRO to "26+ years of creditable service as of 01/01/2010," Husband must have begun military service after September 7, 1980, and, therefore, the high–36 month average will be used to calculate his retired pay base. *See id.* § 1407.

▪ Husband further argues that for purposes of division of his military retirement benefits upon divorce, the high–36 month average should be calculated as of the date of divorce, rather than the date of retirement. We agree. *See Grier v. Grier,* 731 S.W.2d 931, 932 (Tex.1987) (holding that "in apportioning military retirement benefits upon the dissolution of a marriage, the valuation of the community's interest in such benefits is to be based on

the retirement pay which corresponds to the rank actually held by the service spouse on the date of the divorce"); *Caracciolo,* 251 S.W.3d at 572 (husband testified that "high 36" plan was only retirement option and calculated "high 36" based on average base pay during 36 months preceding divorce).

▪ Husband also contends that the denominator of this fraction (bottom fraction above) should be Husband's "gross retired pay on the date of his retirement" rather than "active duty base pay of Member as of his date of retirement." We agree that Wife is entitled to a percentage of Husband's disposable *retired* pay.

Therefore, we sustain the portion of Husband's first issue dealing with the calculation of the retired pay itself found in the DRO. We reverse and remand for the trial court to adjust the formula in the DRO to be consistent with federal and state law.

*Wife's Beneficiary Status*

Finally, Husband argues that the DRO is inconsistent with the agreed divorce decree in that the DRO provides that "[f]ormer Spouse shall be deemed to be the beneficiary of the Survivor Benefit Plan ("SBP") annuity through Member's military retirement and Member shall execute any documents as are required to make the designation of Former Spouse as said beneficiary." The agreed divorce decree does not specifically divide the SBP annuity or mention Wife's status as a former spouse beneficiary to the SBP annuity.[8]

---

6. There is an exception for enlisted members reduced in grade and officers who do not serve satisfactorily in the highest grade held by the officer. *Id.* § 1407(f). In that case, section 1406 applies. *Id.* § 1407(f)(1). There is nothing in the record to suggest that Husband falls into this exception, thereby triggering section 1406.

7. To determine a member's years of service, "each full month of service that is in addition to the number of full years of service creditable to the member shall be credited as 1/12 of a year; and any remaining fractional part of a month shall be disregarded." *Id.* § 1405.

8. The divorce decree does make one reference to survivor benefits. Under the heading "Support as Obligation of Estate," the trial court

Under federal law, a member of the armed forces (1) who is entitled to retired pay or (2) who would be eligible for reserve-component retired pay except for the fact that he is under 60 years old is eligible to participate in the SBP. 10 U.S.C.A. § 1448(a)(1)(A)—(B). The SBP applies to eligible service members who are married or have a dependent child when they become entitled to retired pay or eligible for reserve-component retired pay. *Id.* § 1448(a)(2)(A)-(B). The eligible service member may elect to provide an annuity to a former spouse payable upon the member's death. *Id.* §§ 1448(b)(2)-(3), 1450. Assuming that the statute applies to Husband,[9] he must, at the time of making the election, provide "the Secretary concerned with a written statement" setting forth whether the election is being made pursuant to court order or pursuant to a voluntary written agreement as part of, or incident to, a divorce proceeding and, if so, whether the voluntary written agreement has been incorporated in, or ratified or approved by, a court order. *Id.* § 1448(b)(5). A court order means "a court's final decree of divorce, dissolution, or annulment or a court ordered, ratified,

or approved property settlement incident to such a decree...." *Id.* § 1447(13).

■ Here, the agreed divorce decree does not require Husband to name Wife as a former spouse beneficiary to an SBP annuity.[10] Because the DRO is not part of the parties' agreement and it imposes an additional obligation not included in the agreed divorce decree, the trial court erred by including this obligation in the DRO. We sustain this portion of Husband's first issue. We reverse and remand for the trial court to remove the reference to Wife's status as former spouse beneficiary of Husband's SBP in the DRO.

To summarize, we reverse the DRO for the reasons stated and remand to the trial court for further proceedings. Because of our disposition of this issue, we need not address Husband's contention that the trial court abused its discretion by excluding Husband's expert testimony at the hearing on the motion to correct or reform the judgment. *See* Tex.R.App. P. 47.1.

### B. FINAL DECREE OF DIVORCE

In his second issue, Husband contends that the trial court erred by allowing refer-

---

ordered that the provisions of child support in the decree remained the obligation of Husband's estate and did not terminate on his death. The decree states that "[p]ayments received for the benefit of the children including payments from the Social Security Administration, Department of Veterans Affairs or other governmental agency or life insurance proceeds, annuity payments, trust distributions, or *retirement survivor benefits*, shall be a credit against this obligation." (Emphasis added).

The divorce decree orders Husband to purchase life insurance and name Wife as primary beneficiary for the benefit of the children as additional child support, but there is no indication that the life insurance is a reference to the SBP annuity. The decree states that Husband must maintain the life insurance policy in full force and effect as long as

child support is payable under the terms of the decree.

9. "A person who has a former spouse upon becoming eligible to participate in the Plan may elect to provide an annuity to that former spouse." *Id.* § 1448(b)(2)(A). In addition, "[a] person who is a participant in the Plan and is providing coverage for a spouse or a spouse and child (even though there is no beneficiary currently eligible for such coverage), and who has a former spouse who was not that person's former spouse when that person became eligible to participate in the Plan, may [subject to limitation] elect to provide an annuity to that former spouse." *Id.* § 1448(b)(3)(A)(i)(I)-(II).

10. The informal settlement agreement does not specifically address the SBP either.

ence to the DRO to be stricken from the divorce decree.

■ A party cannot appeal from a judgment to which he has consented or agreed unless there is an allegation and proof of fraud, collusion, or misrepresentation. *Boufaissal v. Boufaissal,* 251 S.W.3d 160, 161–62 (Tex.App.-Dallas 2008, no pet.). Husband attested by his signature that he approved and consented to the divorce decree as to both form and substance. In the body of the decree, the trial court found that the parties had entered into a written agreement as contained in the decree and, to the extent permitted by law, the parties stipulated that the agreement was enforceable as a contract. Despite this fact, Husband argues that he did not agree to the deletion of the language "as awarded in a Domestic Relations Order" in section W–6 of the decree because his attorney did not initial this deletion. This argument is without merit. Although it is true that only Wife's attorney's initials are listed next to the deletion in section W–6, the same deleted reference appears in the corresponding H–6; Husband does not complain about the same deletion here even though only Wife's initials and her attorney's initials appear next to it.[11]

Because Husband consented to the decree and has not made an allegation of fraud, collusion, or misrepresentation, we overrule Husband's second issue.

## C. ATTORNEY'S FEES

In his third issue, Husband argues that the trial court abused its discretion by awarding sanctions against him for filing a motion to correct or reform the judgment.

In her response to the motion to correct or reform the judgment, Wife contends that the motion is groundless and brought for the purpose of harassment. Wife requests reasonable attorney's fees, expenses, and costs through trial and appeal or, in the alternative, reasonable attorney's fees, expenses, and costs through trial and appeal taxed as costs. Wife filed a separate motion for sanctions pursuant to Texas Rule of Civil Procedure 13 in which she contends that the motion to correct or reform judgment is groundless and brought for the purpose of harassment. Wife requests reasonable expenses, including reasonable attorney's fees, incurred in obtaining an order for sanctions. At the hearing on the motion to correct or reform judgment, Wife agreed to pass on her motion for sanctions and proceed with the attorney's fees requested in her response to Husband's motion. The trial court awarded Wife her attorney's fees in the amount of $1,500 and expenses in the amount of $450 for a total amount of $1,950.

Husband's only contention on appeal is that the trial court erred in awarding attorney's fees as sanctions. However, the trial court's order does not state that it is awarding the attorney's fees as sanctions. Likewise, the exchange between the trial court and the attorneys at the hearing on the motion to correct or reform the judgment indicates that the attorney's fees were not awarded as sanctions.

THE COURT: We're dealing with a motion and your response.

WIFE'S COUNSEL: That would be my—

THE COURT: Let me see yours. She's asking for attorney fees, expenses and costs. You want to respond to that, her response, since we're not going forward

---

11. W–6 awards Wife a 50 percent portion of the community sums as a result of Husband's past or present employment. H–6 awards Husband all sums as a result of Husband's past, present, or future employment, except that portion awarded to Wife in the decree.

on her sanctions, she's going on the response.

HUSBAND'S COUNSEL: Well, Your Honor, the only—

THE COURT: Do you want to cross-examine her on anything?

HUSBAND'S COUNSEL: No, Your Honor, I got notice of 1500.

THE COURT: That's in her sanctions, Counsel.

HUSBAND'S COUNSEL: That's in her sanctions motion.

THE COURT: And that's not before the Court, she's not going on that. She's going on her response to your motion to correct or reform.

HUSBAND'S COUNSEL: Okay. So these—these are not going to be sanctions, they're going to be attorney's fees for what purpose?

WIFE'S COUNSEL: I'll dismiss my motion for sanctions if you award the fees today. Obviously, it's not necessary to do that. It's not set until sometime in July anyway.

Husband's only argument on appeal is that the trial court erred in awarding Wife's attorney's fees and expenses as sanctions. Because the record does not reflect his interpretation of the proceedings, his argument is without merit.

Therefore, we overrule Husband's third issue.

### III. CONCLUSION

We affirm the final decree of divorce and the award of attorney's fees and expenses in the order denying the motion to correct or reform judgment. We reverse and remand the domestic relations order for further proceedings consistent with this opinion.