**Opinion issued May 14, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00889-CV

———————————

**UNDERWATER SERVICES, INC., Appellant**

**V.**

**THE OFFSHORE DRILLING COMPANY, Appellee**

**AND**

**THE OFFSHORE DRILLING COMPANY, Appellant**

**V.**

**UNDERWATER SERVICES, INC., Appellee**

On Appeal from the 129th District Court
Harris County, Texas
Trial Court Case No. 2008-35842

## MEMORANDUM OPINION

Underwater Services, Inc. (USI) and The Offshore Drilling Company (TODCO) both appeal the trial court's grant of summary judgment in this case. USI contends that genuine issues of material fact precluded summary judgment on its breach of contract and quantum meruit claims against TODCO. TODCO contends that the trial court erred by dismissing its contract-based counterclaims as part of the summary judgment proceedings. We reverse the trial court's judgment and remand for further proceedings.

## Background

USI provides underwater divers and equipment for the servicing of offshore drilling rigs. TODCO operates a rig in the Gulf of Mexico. TODCO negotiated with USI for the performance of two diving-service projects on that rig: (1) an inspection and repair of a damaged line located in the mat section of the rig and (2) a UWILD[1] of critical welds on the rig's legs. USI's suit against TODCO relates to the second project—the UWILD.

TODCO issued a purchase order for USI to perform the UWILD setting forth a mobilization fee, day rates for divers and equipment, and a total cost of $35,671. The fees and rates stated in TODCO's purchase order matched the fees and rates proposed by USI for its first project with TODCO—the inspection and

---

[1] "UWILD" refers to an underwater inspection in lieu of dry docking.

repair of the damaged line. USI did not submit a separate proposal for the UWILD. According to its petition, USI assembled a crew of divers to perform the UWILD as requested in the TODCO purchase order, TODCO transported the crew to its rig, and the crew spent six days on the rig cleaning the critical welds of the rig's legs and performing other inspection-related services. USI submitted an invoice for all of its services totaling $152,305.

TODCO complained that USI's work did not comply with the American Bureau of Shipping (ABS) procedures governing UWILDs. The ABS procedures require a two-step process: (1) the dive contractor first cleans off or "grit blasts" the critical welds on each leg of the rig, and (2) the dive contractor then conducts an inspection of the rig's legs in the presence of a certified ABS inspector to confirm structural integrity. TODCO complained that USI had grit blasted the critical welds but had not completed the inspection of the rig's legs, forcing TODCO to hire a substitute dive contractor to re-perform USI's work and complete the inspection.

Due to the alleged problems with USI's services and the large discrepancies between the total cost stated on TODCO's purchase order and USI's invoice, TODCO did not pay the invoice. USI sued TODCO, alleging that USI performed valuable services pursuant to a contract with TODCO for the UWILD and that TODCO breached the contract or was unjustly enriched when it refused to pay

3

USI. TODCO answered that it never entered into a contract with USI and that the services for which USI demanded compensation were incomplete and conferred no value to TODCO. TODCO also counterclaimed for declaratory judgment and breach of contract, alleging that USI breached an agreement to release its claims against TODCO in exchange for partial payment of USI's invoices by filing suit.

TODCO moved for traditional summary judgment on USI's breach of contract and quantum meruit claims on three grounds: (1) no contract, (2) breach by USI, and (3) no value in the services provided by USI. At the summary judgment hearing, the trial court stated its intent to grant the motion and order that USI take nothing on its claims. The trial court asked TODCO's counsel whether such a ruling would be a final judgment. TODCO's counsel responded affirmatively. Thereafter, the trial court signed an order granting TODCO's summary judgment motion and finally disposing of all claims and all parties in the lawsuit, including TODCO's counterclaims.

Contrary to its representations at the summary judgment hearing, TODCO argued in a motion to modify the final judgment that the summary judgment ruling was only a partial disposition of the lawsuit because TODCO's counterclaims

4

remained pending.[2] The motion to modify was overruled by operation of law. Both parties appealed the summary disposition of their claims.

## Standard of Review

We review the trial court's grant of summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 298 S.W.3d 844, 848 (Tex. 2009). The party moving for traditional summary judgment must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215−16 (Tex. 2003). A defendant moving for summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). "Once the defendant produces sufficient evidence to establish the right to summary judgment,

---

[2] As a threshold matter, we note that there is no issue here regarding whether the trial court's summary judgment order is final and appealable. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001) (stating general rule that appeal may be taken only from final judgment). The order—entitled "Final Summary Judgment"—expressly states that USI take nothing by its suit and that it "is the final judgment, it disposes of all claims and parties, and it is appealable." *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) (per curiam) (explaining that order or judgment entered before conventional trial on merits is final for purpose of appeal if it actually disposes of every pending claim and party or if it states with unmistakable clarity that it finally disposes of all claims and all parties); *see also G & H Towing Co. v. Magee*, 347 S.W.3d 293, 298 (Tex. 2011) (stating, "When a trial court grants more relief than requested and, therefore, makes an otherwise partial summary judgment final, that judgment, although erroneous, is final and appealable.").

the plaintiff must present evidence sufficient to raise a fact issue." *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). When, as here, the summary judgment does not specifically state the grounds on which it was granted, we must affirm the summary judgment if any of the asserted grounds are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872−73 (Tex. 2000).

## USI's Appeal

USI challenges the summary judgment rendered in TODCO's favor on two grounds: (1) TODCO's summary judgment evidence was insufficient as a matter of law to support the trial court's determination that USI should take nothing on its claims; and (2) USI's summary judgment evidence raised genuine issues of material fact on the challenged elements of its claims for breach of contract and quantum meruit.

### A. Breach of contract

There is no dispute that the parties did not execute a master services agreement or other written contract for the performance of a UWILD on TODCO's rig, but that (1) TODCO submitted a purchase order to USI for the UWILD; (2) USI mobilized a dive team; (3) TODCO transported USI's dive team to its rig; (4) USI's dive team spent six days on the rig and performed inspection-related services, including grit blasting the critical welds of the rig's legs; (5) USI did not complete the UWILD; and (6) TODCO did not pay USI's invoice. Based on these

facts, USI's petition stated a cause of action for breach of contract. TODCO argues that the trial court properly granted summary judgment on USI's contract claim because the evidence conclusively established that the parties did not achieve a meeting of the minds as to the material contract terms of price and duration of work and therefore no enforceable contract existed; alternatively, TODCO argues that USI failed to perform under the contract as a matter of law. USI counters that TODCO's arguments impermissibly rest on lay testimony that is nothing more than legal conclusions and ignores evidence of the circumstances of USI's work from which a meeting of the minds can be inferred.

### 1. Contract formation

Read liberally, USI's petition states a cause of action for breach of an express or implied contract.[3] "The elements of a contract, express or implied, are identical"; there must be an offer, an acceptance, a meeting of the minds, each party's consent to the terms, and execution and delivery of the contract with the intent that it be mutually binding. *Plotkin v. Joekel*, 304 S.W.3d 455, 476 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (quoting *Univ. Nat'l Bank v. Ernst &*

---

[3] The record does not indicate that TODCO specially excepted to the pleadings on the manner of contract formation. While TODCO challenged the existence of a written or oral contract in its summary judgment motion, USI's primary argument on appeal is that an implied contract arose from the course of the parties' dealing. Because USI does not contend on appeal that it pleaded a claim on a written contract or that the trial court erred by dismissing such a claim on summary judgment, our analysis focuses on the existence of an oral or implied-in-fact contract and considers the parties' writings only to the extent they support an inference regarding the element of mutual agreement.

*Whinney*, 773 S.W.2d 707, 710 (Tex. App.—San Antonio 1989, no writ)). "[T]he real difference between express contracts and those implied in fact is in the character and manner of proof required to establish them." *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972). "In each instance there must be shown the element of mutual agreement which, in the case of an implied contract, is inferred from the circumstances." *Id.*; *see Angeles v. Brownsville Valley Reg'l Med. Ctr., Inc.*, 960 S.W.2d 854, 859 (Tex. App.—Corpus Christi 1997, pet. denied) ("An implied contract arises from the dealings of the parties, from which the facts show that the minds of the parties met on the terms of the contract without any legally expressed agreement thereto.").

According to TODCO, the statements of USI's and TODCO's respective representatives and the documents exchanged between them conclusively negated a meeting of the minds as to the material contract terms of price and length of time to complete the UWILD. As conclusive proof of the absence of an agreement as to price or time, TODCO relied on the following witness testimony:

- the deposition testimony of Richard Palmietto—USI's President and CEO—indicating that David Landin—USI's Dive Coordinator—was the person with whom TODCO would have communicated an agreement for the UWILD;

- the deposition testimony of Landin admitting that USI did not have a verbal contract with TODCO and that USI and TODCO did not agree on a "total price" for the UWILD or the length of time it would take to complete the UWILD; and

8

- the affidavit testimony of John Crabtree, Jr.—TODCO's Director of Technical Support—averring that USI and TODCO never agreed as to the total contract price, the length of time it would take to complete the UWILD, or the permissible charges for standby, equipment-related delays, or weather-related delays.

TODCO further asserted that the documents purportedly supporting the transaction—i.e., the proposal, purchase order, and invoice—confirm that there was no meeting of the minds as to price or time.

While we agree with TODCO that the evidence on which it relied demonstrates that there was no agreement as to the total contract price or the time by which the UWILD had to be completed, we disagree that TODCO is entitled to summary judgment. Regarding the total contract price, Palmietto testified that "[s]ometimes the dollar amount is not essential." The summary judgment record contains some evidence that the parties' agreed to a day rate in lieu of a total contract price. This evidence includes:

- Landin's deposition testimony suggesting that purchase orders for diving services sometimes state a day rate for labor and equipment instead of a total contract price;

- Palmietto's testimony that he believed the parties had entered into a contract because they had agreed as to the scope of the job and because TODCO was aware of USI's day rate;

- Palmietto's confirmation that much of the work USI performs is charged on a "per-day basis" and that, in most cases, the purchase order is USI's authorization to commence work; and

9

- the TODCO purchase order for the UWILD and the USI proposal for prior work stating the same day rates for labor and equipment.

Regarding the time for the inspection, Palmietto testified on behalf of USI that project length is often difficult to estimate due to the many variables that affect underwater diving, including marine traffic and weather. TODCO does not point to any evidence indicating that time was a material term or was of the essence in completing the UWILD. We thus conclude that fact issues exist as to whether the parties achieved a meeting of the minds on the contract price and as to the materiality of the total contract price and the time for completion.

Our conclusion that fact issues exist is strengthened by the evidence presented by USI showing circumstances that support an inference of a meeting of the minds on the terms of a contract absent any written or oral expression of the agreement by the parties. The evidence attached to USI's summary judgment response showed that a TODCO employee signed the "back-up time tickets" for work performed by USI on the rig, that TODCO transported the USI dive crew to the rig, and that TODCO's rig-compliance manager would not have allowed unauthorized persons on the rig. Therefore, under the applicable standard of review, we conclude that a fact issue was raised on the breach of contract claim, and thus, to the extent the trial court granted summary judgment due to the absence of a meeting of the minds, the trial court erred.

## 2. Performance

TODCO alternatively moved for summary judgment on the ground that, even if a valid contract existed, USI failed to perform under the contract as a matter of law. Performance or tendered performance by the plaintiff is an element of a breach of contract claim. *See Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.—Houston [1st Dist.] 1997, no writ) (reciting elements of breach of contract claim). To show USI's failed performance, TODCO presented a single exchange from Palmietto's deposition:

> [Counsel]: The UWILD inspection that USI performed for TODCO was not completed, correct?
>
> [Palmietto]: That's right.

This exchange confirms only what the parties do not dispute—that the rig's legs had not been inspected when USI's dive crew left the rig. Thus, Palmietto's statement—"That's right"—standing alone does not conclusively negate the performance element of USI's contract claim. By agreeing that the UWILD was not complete, Palmietto did not necessarily agree that completion of the UWILD by USI was a material term of the contract. And TODCO did not offer any other evidence of the terms under which the inspection was to be conducted, by whom the inspection was to be conducted, or by when the inspection was to be conducted. Moreover, the same evidence that gives rise to the existence of a fact issue as to whether the parties agreed to a day rate also provides some support for

11

USI's position that it expected to be paid based on the work performed, not upon completion of the UWILD. To the extent the trial court granted summary judgment on USI's contract claim on the ground that USI failed to perform, the trial court erred.

Under the applicable standard of review, we conclude that neither of the grounds asserted in TODCO's motion—no contract existed or USI failed to perform—support the trial court's summary judgment on USI's breach of contract claim. Having concluded that TODCO did not conclusively negate the formation of a valid contract or USI's performance or tendered performance thereunder, we hold that the trial court erred in granting summary judgment on USI's breach of contract claim.

## B. Quantum meruit

In addition to its contract claim, USI sought to recover the value of the grit blasting and other inspection-related services it performed on TODCO's rig in quantum meruit. Quantum meruit is an equitable remedy based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005) (orig. proceeding). To recover in quantum meruit, USI must prove (1) that valuable services were rendered or material furnished, (2) for TODCO, (3) which services and materials TODCO accepted, used, and enjoyed, (4) under such circumstances

12

as reasonably notified TODCO that USI, in performing such services, expected to be paid by TODCO. *See Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990); *Tricon Tool & Supply, Inc. v. Thumann*, 226 S.W.3d 494, 502 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

TODCO argues that the trial court properly dismissed the quantum meruit claim because the evidence that USI did not complete the UWILD and thereby "forced" TODCO to hire a substitute dive contractor established as a matter of law that USI's grit blasting and other inspection-related services were not valuable to TODCO. According to TODCO, the deposition testimony of the two USI representatives, Palmietto and Landin, and the affidavit testimony of TODCO's representative, Crabtree, conclusively established the following facts:

- the procedures established by ABS—"a recognized provider of marine and offshore classification and certification services"—govern the performance of UWILDs;

- ABS procedures call for a two-step process. First, the dive contractor cleans off or grit blasts the critical welds on each leg of the rig. Second, the dive contractor conducts an inspection of the rig's legs in the presence of a certified ABS inspector to confirm structural integrity;

- USI's dive team spent six days on the rig, but only performed step one of the UWILD—grit blasting—and did not perform step two—inspection of the critical welds on each of the rig's legs;

- "[i]n order to complete the required UWILD, TODCO had to hire another dive contractor"; and

13

- because ABS procedures require grit blasting to be done before the inspection, "the substitute dive contractor had to re-perform all of USI's work."

USI asserts that these facts do not entitle TODCO to summary judgment on the quantum meruit claim for a number of reasons; primarily, USI challenges the sufficiency of Crabtree's affidavit, which is the only evidence of the work performed by the substitute dive contractor. According to USI, Crabtree's averment that the substitute dive contractor had to "re-perform all of USI's work" does not conclusively disprove the value of USI's work because the averment is unsupported by facts.[4] We agree.

It is undisputed that USI performed some grit blasting work approximately two months before the substitute dive contractor completed the UWILD. To conclude as a matter of law that USI's grit blasting work conferred no value to TODCO, we would have to infer from Crabtree's statement about the substitute dive contractor's work that (1) ABS procedures require grit blasting of the critical

---

[4]  USI makes a number of other objections to Crabtree's affidavit. Because USI did not make any objections to TODCO's summary judgment evidence in the trial court, however, we may consider its objections to Crabtree's affidavit on appeal only to the extent the objections raise a substantive defect—i.e., that Crabtree's affidavit was conclusory or unsupported by facts. *See Green v. Indust. Specialty Contractors, Inc.*, 1 S.W.3d 126, 130 (Tex. App.—Houston [1st Dist.] 1999, no pet.). Defects in the form of the affidavit or its attachments must be preserved by an objection in the trial court. *See* TEX. R. CIV. P. 166a(f); *Mathis v. Bocell*, 982 S.W.2d 52, 60 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (holding that failure to attach exhibits to affidavit is waivable defect in form); *Grand Prairie Indep. Sch. Dist. v. Vaughan*, 792 S.W.2d 944, 945 (Tex. 1990) (holding that failure to affirmatively show that affiant had personal knowledge is defect in form that must be preserved in trial court).

welds of a rig's legs within a certain time of the inspection or (2) the intervening two-month period rendered the critical welds of the rig's legs unacceptable or inaccessible for inspection. But neither inference is supported by facts set forth in Crabtree's affidavit or elsewhere in the summary judgment record.

First, although Palmietto, Landin, and Crabtree agreed that the ABS procedures for UWILDs required grist blasting of critical welds before the inspection of the rig's legs, they did not testify to the immediacy with which the grit blasting had to be done before the inspection. That is, no person stated that the grist blasting had to be performed immediately before or within a certain time of the inspection. And the ABS procedures, which might dictate the timing of the grit blasting, are not included in the summary judgment record.

Second, as pointed out by USI, Crabtree did not testify to the circumstances under which the substitute dive contractor performed its work. For example, he did not state that the corrosion and marine growth that were cleared from the critical welds by USI recurred in the intervening two-month period, requiring the substitute dive contractor to start its work under the same conditions under which USI performed. Palmietto's deposition testimony suggesting that grit blasting services are affected by rust or paint on critical welds supports an inference that critical welds require varying degrees of grit blasting based on their condition.

15

Crabtree's affidavit does not set forth facts that negate USI's assertion that its grit blasting work improved the conditions for the substitute dive contractor.

Thus, there are gaps in TODCO's proof of the value, or lack thereof, of USI's work. Under the applicable standard of review, we conclude that TODCO's own summary judgment evidence did not conclusively negate the second element of USI's quantum meruit claim, namely whether USI rendered valuable grit blasting and other inspection-related services. Accordingly, we hold that the trial court erred in granting summary judgment on USI's quantum meruit claim.

## C. Attorney's fees

On appeal, USI also challenges the trial court's rendition of summary judgment on USI's claim for attorney's fees. Because we have concluded that genuine issues of material fact precluded summary judgment on USI's breach of contract and quantum meruit claims, we also conclude that summary judgment was improper on USI's attorney's fees claim.

## TODCO's Appeal

In its appeal, TODCO argues that the trial court erred by dismissing TODCO's counterclaims for declaratory judgment and breach of contract because those claims were not the subject of any summary judgment motion. Although USI acknowledges that the trial court did not have before it any summary judgment motion on TODCO's counterclaims, USI urges the Court to affirm the summary

16

judgment as to TODCO on the grounds that (1) TODCO consented to the dismissal of its counterclaims by orally representing to the trial court that the summary judgment against USI was a final judgment and (2) error, if any, was harmless because TODCO's counterclaims fail as a matter of law.

## A.      Consent judgment

During the summary judgment hearing, the following exchange occurred regarding TODCO's counterclaims:

> THE COURT: On your [TODCO's] motion for summary judgment you [TODCO] also assert that they [USI] breached, right?
>
> [TODCO'S COUNSEL]: That's in our - - we've done that in our pleadings, which - - and that's an unrelated issue. After - - if you want me to get into this, Your Honor?
>
> After both of the jobs were performed, TODCO said, "Look, you didn't complete the UWILD. We're not happy with the work you performed. We'll pay you for the work on the mat inspection and repair, if you forgive the UWILD inspection." And TODCO, the understanding is they said, "Sure, we'll - - let's do that."
>
> And now they've come back and sued us after we paid. But that's totally irrelevant to the summary judgment.
>
> [USI'S COUNSEL]: . . . There is no documentation at all, no e-mails between the parties on that, nothing that indeed that was the agreement. But that's been paid. But that's been their counter claim, which I'm sure they're going to raise at time of trial, that we breached the contract, because they said if we paid the dock side work we don't have to pay for the off shore work.
>
> [TODCO'S COUNSEL]: It's unrelated to the summary judgment.
>
> [TRIAL COURT]: This is final summary judgment?

17

[TODCO'S COUNSEL]: Yes.

. . . .

[TRIAL COURT]: . . . The Court grants the motion for summary judgment. Is there anything else?

[USI'S COUNSEL]: Is that on the contract issue or on the quantum meruit issue, too?

[TRIAL COURT]: On both.

. . . .

[TRIAL COURT]: It's final.

[TODCO'S COUNSEL]: Yep.

Based on this exchange, USI contends that TODCO consented to the dismissal of its counterclaims by agreeing that the trial court could render a final summary judgment and therefore waived any error regarding the trial court's judgment.

"An agreed judgment is one entered on agreement of the parties, which receives the sanction of the court, and it constitutes a contract between the parties to the agreement. A consent judgment is a judgment in which the provisions and terms are settled and agreed to by the parties to the action." *Gahunia v. Acorn Private Ltd.*, No. 14-98-01259-CV, 2000 WL 144077, at *2 (Tex. App.—Houston [14th Dist.] Feb. 10, 2000, pet. denied) (not designated for publication) (citing Black's Law Dictionary 842 (6th ed. 1990)). While it is generally true that a party cannot appeal from a judgment to which it has consented, the party's consent must be explicit and unmistakable for the consent judgment to be valid. *See Chang v.*

18

*Nguyen*, 81 S.W.3d 314, 316 n.1 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *Baw v. Baw*, 949 S.W.2d 764, 766 (Tex. App.—Dallas 1997, no writ). For example, a party's signature attesting to the form and substance of a judgment standing alone is insufficient to establish a consent judgment. *See Hicks v. Hicks*, 348 S.W.3d 281, 283 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Chang*, 81 S.W.3d at 316 n.1; *Baw*, 949 S.W.2d at 767.

We reject USI's contention that the summary judgment is a consent judgment. For USI to prevail on this issue, we would have to infer from TODCO's "yes" answers to the trial court's finality questions that TODCO consented to the dismissal of its counterclaims. But a valid consent judgment requires more; it requires explicit and unmistakable consent. *See Hicks*, 348 S.W.3d at 283; *Chang*, 81 S.W.3d at 316 n.1. While there can be no dispute that TODCO misinformed the trial court about the effect of its summary judgment ruling, TODCO's misstatements are not the equivalent of an explicit and unmistakable waiver of its counterclaims. The record does not establish a settlement or agreement between the parties regarding the disposition of TODCO's counterclaims. And TODCO did not expressly state that it withdrew the counterclaims or no longer wished to pursue them. To the contrary, TODCO repeatedly clarified for the trial court that the counterclaims were not the subject of the summary judgment hearing, thrice

stating that the counterclaims were "unrelated" or "totally irrelevant" to the summary judgment motion before the trial court.

These circumstances do not establish an agreement between the parties regarding the disposition of TODCO's counterclaims or TODCO's explicit and unmistakable consent to the dismissal of its counterclaims. Accordingly, we hold that TODCO did not waive its right to appeal the dismissal of its counterclaims.

## B.    Harmless error

USI argues in the alternative that any error resulting from the dismissal of TODCO's counterclaims is harmless error because the counterclaims fail as a matter of law. *See* TEX. R. APP. P. 44.1(a) (providing that error in trial court's judgment is not reversible unless court of appeals concludes error complained of "probably caused the rendition of an improper judgment" or "probably prevented the appellant from properly presenting the case [on appeal]"). USI did not file a summary judgment motion attacking either of TODCO's counterclaims in the trial court. It is axiomatic that a party may not be granted judgment as a matter of law on a cause of action not addressed in a summary judgment proceeding. *Wilson v. Davis*, 305 S.W.3d 57, 73 (Tex. App.—Houston [1st Dist.] 2009, no pet.). Because TODCO's counterclaims were not addressed in a summary judgment motion, the trial court committed reversible error by rendering summary judgment on the counterclaims. *See G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011)

20

("When a trial court grants more relief than requested and, therefore, makes an otherwise partial summary judgment final, that judgment, although erroneous, is final and appealable."); *see also* TEX. R. CIV. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); *Wilson* 305 S.W.3d at 73.

## Conclusion

The trial court erred in granting summary judgment as to USI's breach of contract and quantum meruit claims and in dismissing TODCO's counterclaims for breach of contract and declaratory judgment. Accordingly, we reverse the trial court's summary judgment as to (1) USI's breach of contract, quantum meruit, and attorney's fees claims and (2) TODCO's counterclaims for breach of contract and declaratory judgment. We remand this case for further proceedings.


Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.