

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| DIANA DOUGLAS, | § | No. 08-12-00259-CV |
| Appellant/Cross-Appellee, | § | Appeal from the |
| v. | § | 383rd Judicial District Court |
| EDDIE G. DOUGLAS, | § | of El Paso County, Texas |
| Appellee/Cross-Appellant. | § | (TC# 88-7957) |
|  | § |  |

## **O P I N I O N**

In this appeal from the trial court' s post-divorce clarification order, both Diana Douglas and Eddie G. Douglas challenge the trial court's division of Eddie's disposable military retired pay. Diana argues the division is inconsistent with the unambiguous language in the decree. Eddie raises the same complaint, but also contends the trial court erred in awarding Diana an arrearage judgment and in failing to award him attorney's fees and costs and to file findings of fact and conclusions of law. For the reasons discussed below, we agree the trial court improperly calculated the percentage of Eddie's military retired pay to which Diana is entitled and the amount of arrearages owed. We, therefore, affirm in part, reverse and render in part, and reverse and remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Eddie and Diana married in January 1974 and divorced in September 1989.[1]   At the time

of the divorce, Eddie was a Captain in the United States Air Force with 150 months of creditable

service.   The decree apportioned Eddie's military retirement pay as follows:

> [T]he Court ORDERS that such military retirement benefits shall be divided and
> distributed as follows:   [Diana] is invested in one-half (1/2) of [Eddie]'s 'Gross
> Retired Income' (military retired pay) as her community property interest share of
> [Eddie]'s military retired pay, if, and as received by [Eddie].   In the event [Eddie]
> retires from the United States Air Force, [Diana] shall have a community property
> interest share of one-half (1/2) times [Eddie]'s Air Force retirement, based upon a
> formula of one-half (1/2) times a fraction of which the numerator (150) is the
> number of months that the parties were married during which time [Eddie] had
> credible time in the United States Air Force toward retirement, prior to the date of
> divorce (150 months), and the denominator of which is the number of months that
> [Eddie] shall have of credible service toward his military retirement, times gross
> retirement benefits receivable, if [Eddie] were eligible for retirement at the time of
> the divorce, at his present rank of Captain.

Neither Eddie nor Diana appealed the divorce decree, and the record does not contain any

post-judgment motion challenging the decree.

After the divorce, Eddie remained in the Air Force.   In March 2009, he retired from the

Air Force with the rank of Colonel.   By then, Eddie had accrued 372 months of creditable service.

Upon his retirement, Eddie began receiving $7,719.00 in gross retirement pay per month.

Shortly thereafter, Diana applied to the Defense Finance and Accounting Service (DFAS)

for her share of Eddie's military retirement and submitted a certified copy of the divorce decree in

support of her application.   In July 2009, DFAS notified Diana that it could not approve her

application because the language in the decree dividing Eddie's retired pay was faulty.   DFAS

advised Diana that this deficiency could be remedied if she obtained a clarifying order that:   (1)

awarded either a fixed sum or a percentage of Eddie's retirement pay; or (2) that provided a

---

[1] The divorce decree was not signed until May 1990.

formula "wherein the only missing element is the denominator (member's years of service or total points earned by a reservist)."

In October 2009, Diana moved to clarify the divorce decree and to enforce the division of property. Specifically, Diana moved for an order dividing Eddie's military retirement pension benefits , for an award of arrearages for underpayments, including pre- and post-judgment interest, and for an award of attorney's fees. After answering, Eddie filed a counter-motion for clarification.

In March 2011, the trial court held an evidentiary hearing on the parties' competing motions.[2] After taking the matter under advisement, the trial court issued a clarification order in July 2012. The order provides, in relevant part, that:

> The former spouse, Ms. Diana Douglas, is entitled to receive *4.096% of the Member, Mr. Eddie Granger Douglas', Disposable Military Retired Pay*. This interest in Mr. Eddie Granger Douglas's retirement includes any future costs of living or other benefits which are not derived as a result of future services of the Member, Mr. Eddie Granger Douglas, and Ms. Diana Douglas is entitled to any future costs of living or other benefits which are not derived as a result of future services of the Member, Mr. Eddie Granger Douglas, absolutely and forever.
>
> It is also ordered that because the Member, Mr. Eddie Granger Douglas, has not paid Ms. Diana Douglas her proportion of his military retired pay since 2009, this Court finds and orders that he owes Ms. Diana Douglas an arrearage in the amount of $9,877.54. [Emphasis added].

The order does not award attorney's fees to any party.

Although the trial court's order contained findings of fact and conclusions of law, they were rudimentary in nature and failed to explain the basis for the trial court's decision. Consequently, both parties timely requested findings of fact and conclusions of law, but none were

---

[2] This was the second hearing on the matter. The trial court first heard the matter in August 2010 and signed a clarification order approximately three months later. But the trial court granted Diana's request to reconsider the matter *de novo*.

3

issued.   Eddie, but not Diana, timely filed a notice of past due findings and conclusions.   Despite the notice, the trial court failed to file the requested findings and conclusions.

## MILITARY RETIREMENT PAY

We begin by addressing the parties' contentions that the trial court incorrectly calculated the percentage of Eddie's military retirement pay to which Diana is entitled.   Although both parties contend the trial court used the wrong formula in calculating that percentage, they urge different formulas.

In her sole issue, Diana insists the trial court should have used the following formula:

$$50\% \times \frac{\text{150 months of service during marriage}}{\text{150 months of service credited toward marriage}} \times \text{gross retirement benefits receivable}$$

According to Diana the dollar amount corresponding to Eddie's "gross retirement benefits receivable" had he been entitled to retire on the date of divorce at his then-rank of Captain is $2,808.60.   As stipulated by the parties, this amount corresponds to the final base pay of a Captain with 150 months of longevity on September 14, 1989.   Thus, under Diana's formula, she is entitled to $1,404.03 per month (50 percent of $2,808.60).   In his second-cross issue, Eddie is adamant the trial court should have used the following formula:

$$\frac{50\% \times \frac{\text{150 months of service during marriage}}{\text{372 months of service credited toward marriage}} \times 23.7500\% \times \$2,808.60 \text{ (base pay of Captain at divorce)}}{\$7,719.00 \text{ (total monthly amount received based on 372 months of service)}}$$

Under Eddie's formula, Diana is entitled to $134.48 per month (1.7421 percent of $7,719.00—the gross retired pay Eddie began receiving upon retirement based on 372 months of creditable service).

We agree the trial court erred in concluding Diana is entitled to 4.096 percent of Eddie's "Disposable Military Retired Pay."

4

## *Standard of Review*

We review the trial court's ruling on a post-divorce motion for clarification or enforcement of a divorce decree for an abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990)(per curiam). A trial court abuses its discretion when it acts arbitrarily or unreasonable or without reference to any guiding rules or principles. *Id*.

When, as here, the trial court makes no separate findings of fact or conclusions of law, we must draw every reasonable inference supported by the record in favor of the trial court's judgment. *Id*. But when, as here, the appellate record contains the reporter's and clerk's records, the trial court's implied findings and conclusions are not conclusive. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

## *Applicable Law*

A trial court may enter orders of enforcement and clarification to enforce or specify more precisely a divorce decree's property division. TEX.FAM.CODE ANN. § 9.006(a)(West Supp. 2014). But a trial court is prohibited from amending, modifying, altering, or changing the division of property originally set out in the decree. TEX.FAM.CODE ANN. § 9.007(a)(West 2006).

In interpreting the language of a decree, we construe the decree as a whole to harmonize and give effect to the entire decree. *Hagen v. Hagen*, 282 S.W.3d 899, 901 (Tex. 2009)[quotation marks omitted]. If the decree is unambiguous, we interpret it by adhering to the literal language used in the decree. *Id*. If the decree is ambiguous, however, we interpret it by reviewing both the decree in its entirety and the record. *Id*. Whether a divorce decree is ambiguous is a question of law. *Id*. at 901-02 [quotation marks omitted].

## *Apportionment and Valuation of Community Interest*

The divorce decree employs the following formula in awarding Diana a community interest in Eddie's gross retired pay:

$$50\% \times \frac{150}{\text{"the number of months that [Eddie] shall have of credible service toward his military retirement"}}$$

$$\times \text{"gross retirement benefits receivable, if [Eddie] were eligible for retirement at the time of the divorce, at his present rank of Captain"}$$

Eddie had not retired from the Air Force when he and Diana divorced in 1989.

Since 1983, Texas law has provided a formula for determining the extent and value of the community interest in an employee spouse's defined-benefit plan, when the latter began plan participation during marriage but retired after divorce. *See Berry v. Berry*, 647 S.W.2d 945, 946-47 (Tex. 1983). This formula is known as the *Berry* formula. Under the *Berry* formula, the extent of the community's interest is determined by dividing the number of months married under the plan by *the number of months employed under the plan at the time of divorce* and the value of the interest is determined *as of the date of the divorce* rather than as of the date of retirement. *Berry*, 647 S.W.2d 945, 946-47. The *Berry* formula is the formula employed in the divorce decree. When applied to Eddie's service record, the formula yields the following:

$$50\% \times \frac{150 \text{ (months married under the plan)}}{150 \text{ (months employed under the plan at divorce)}}$$

$$\times \text{gross retirement benefits receivable by Captain at divorce}$$

or

$$50\% \times \text{gross retirement benefits receivable by Captain at divorce}$$

Diana agrees the decree employs the *Berry* formula. Eddie does not. He argues "[t]he absence of the '150' in the denominator to match the one in the numerator tracks the legal genre in 1989 and follows the *Taggart* formula, but with a limitation—'if Respondent/Husband were

6

eligible for retirement at the time of the divorce, at his present rank of Captain'—to comply with the dictate of *Berry*." In other words, Eddie posits that the extent of Diana's community interest is governed by the fraction formula established in *Taggart v. Taggart*, 552 S.W.2d 422 (Tex. 1977), whereas the value of her interest is governed by the *Berry* formula. Under the *Taggart* formula, the extent of the non-member spouse's community interest in retirement benefits is calculated by dividing the number of months married under the plan by the total number of months employed at retirement. Thus, when applied to his service record, Eddie's purported hybrid *Taggart-Berry* formula yields the following:

$$50\% \times \frac{150 \text{ (months married under the plan)}}{372 \text{ (months employed under the plan at retirement)}}$$

$$\times \text{ gross retirement benefits receivable by Captain at divorce}$$

or

$$20.16129032258065\% \times \text{gross retirement benefits receivable by Captain at divorce}$$

Eddie's argument is unavailing for two reasons. First, and more importantly, the *Berry* court, though expressly declining to overrule *Taggart*, significantly altered the *Taggart* formula. *See Shanks v. Treadway*, 110 S.W.3d 444, 446 n.3 (Tex. 2003)(recognizing that *Berry* altered the apportionment and valuation portions of the *Taggart* formula); *Wilson v. Uzzell*, 953 S.W.2d 384, 390 (Tex.App--El Paso 1997, no pet.)(same). Second, Eddie cites no authority on point, and we have found none, to support the proposition that the decree uses a hybrid *Taggart-Berry* formula to divide his military retired pay. Further, the portions of the legal commentaries Eddie cites in support of this proposition do not aid him. *See* David R. McClure & Larry H. Schwartz, *Federal Retirement Benefits*, STATE BAR OF TEXAS, ADVANCED FAMILY LAW COURSE, in Volume 2, Chapter V, pgs. 36-40 (1989)(discussing whether federal law limits the award of

retirement benefits to disposable pay rather than gross pay in light of *Grier* and *Mansell v. Mansell*, 490 U.S. 581, 584, 109 S.Ct. 2023, 2026, 104 L.Ed.2d 675 (1989)); John Compere, *Texas Family Law Overview and Update*, State Bar of Texas, 8th Annual General Practice Institute, Tab F, pgs. 11-12 (May 1985)(discussing division of retirement benefits under Texas law, particularly under the *Taggart* and *Berry* formulas).

Eddie also contends "'372' can be the only logical denominator [because] if the denominator were '150,' as Diana argues, that part of the hypothetical award would be superfluous since the number would then be a known commodity." In hindsight, the trial court should have fixed the denominator at 150. But that the trial court failed to do so does not mean the decree did not employ the *Berry* formula. To accept Eddie's proposed formula is to run afoul of the principle espoused in *Berry* that the community's interest in a retirement plan must correspond to the percentage of the plan accrued during marriage. Eddie's formula would impermissible dilute Diana's community interest accrued during the parties' marriage.

In sum, the decree is governed by the *Berry* formula, not the *Taggart* formula or some hybrid of it.

### *Hypothetical Gross Retired Pay of Air Force Captain at Time of Divorce*

When the *Berry* formula is applied to apportion military retirement benefits upon divorce, "the valuation of the community's interest in such benefits is to be based on the retirement pay which corresponds to the rank actually held by the service spouse on the date of the divorce." *Grier v. Grier*, 731 S.W.2d 931, 932 (Tex. 1987)[3]. Here, it is undisputed that Eddie was a Captain

---

[3] This Court recongnized that *Grier* was overruled, in part, by *Mansell*. *See Chandler v. Chandler*, 991 S.W.2d 367, 398 (Tex.App.--El Paso 1999, pet. denied), *cert. denied*, 529 U.S. 1054, 120 S.Ct. 1557, 146 L.Ed.2d 462 (2000)(concluding *Mansell* explicitly rejected the Texas Supreme Court's interpretation of the USFSPA in *Grier* that the Act does not limit a trial court from treating total retired pay as community property). *Grier*, however, has not

8

with 150 months of creditable service when the parties divorced. It is also undisputed that the Uniformed Services Former Spouses Protection Act (USFSPA)[4] was in effect in 1989, and the decree's language indicates Eddie's gross retired pay should be divided in accordance with USFSPA:

> It is the intention of this Decree to comply in all respects with the Uniformed Services Former Spouses' Protection Act, 10 USC, Section 1401, et seq. which would enable the wife to receive directly from the United States Air Force that portion of the Respondent/Husband's 'Gross Retirement Income' awarded to Petitioner/Wife by this Decree.

Because Eddie was not retired when he and Diana divorced, her interest in his gross retired pay is based on his hypothetical gross retired pay, which is calculated as if he had retired at the time of their divorce. *See Guidance on Dividing Military Retired Pay*, Garnishment Operations, Defense Finance and Accounting Service 14, Revised Jan. 29 2012 (available at http://www.dfas.mil/garnishment/usfspa/attorneyinstructions.html)("The hypothetical retired pay amount is a fictional computation, in that the member often does not have the required 20 years of creditable service necessary to be eligible to receive retired pay on the date his or her retired pay is divided. Hence, we are computing a retired pay amount as if the member would have been

---

been expressly overruled and remains good law for the proposition that, for purposes of apportioning military retirement benefits upon divorce under the *Berry* formula, the service member's retired pay should be calculated as of the date of divorce, rather than the date of retirement. *See Hicks v. Hicks*, 348 S.W.3d 281, 287 (Tex.App.--Houston [14th Dist.] 2011, no pet.)(citing *Grier* for this proposition); *Caracciolo v. Caracciolo*, 251 S.W.3d 568, 572 (Tex.App.--San Antonio 2007, no pet.)(same).

[4] USFSPA grants the States the authority to treat all *disposable retired pay* as marital property. *See* 10 U.S.C.A. § 1408(c)(1)(West 2010). The Act was adopted by Congress in 1982 in response to the Supreme Court's decision in *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), holding that State courts had no jurisdiction under any circumstances to treat non-disability retired pay of a military member as marital property upon divorce. *Mansell v. Mansell*, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989); *see* Peter Mallory, *Military Retired Pay and Divorce: Congress Retires McCarty v. McCarty--Is That Enough?*, 40 WASH. & LEE L. REV. 271 (1983). By its terms, USFSPA took effect on February 1, 1983, but it provided that courts had the ability to effectuate divisions of military retired or retainer pay as of June 25, 1981. Section 1006 of Pub.L. 97-252, as amended Pub.L. 98-94, Title IX, § 941(c)(4), Sept. 24, 1983, 97 Stat. 614; Pub.L. 98-525, Title VI, § 645(b), Oct. 19, 1984, 98 Stat. 2492.

eligible to retire on that date.").

Under USFSPA, the hypothetical retired gross pay award corresponding to the service member's rank on the date of divorce is computed by multiplying the member's retired pay base by the retired pay multiplier. 10 U.S.C.A. § 3991(a)(1)(A)-(B)(West 2010). For service members who entered the military before September 8, 1980, the retired pay base is the member's final basic pay. 10 U.S.C.A. § 1406(c). Since Eddie entered the Air Force before that date, this method is used. The parties agree Eddie's retired pay base is $2,808.60—the final basic pay of a Captain with 150 months of longevity on September 14, 1989. The retired pay multiplier is the product of 2.5 percent of the member's years of creditable service. 10 U.S.C.A. § 1409(b)(1)(A)-(B). Eddie's 150 months of creditable service is equivalent to 12.5 years.[5] Based on these figures, Eddie's retired pay multiplier is .3125 (12.5 years multiplied by 2.5 percent).

Applying the formula, Eddie's hypothetical retired gross pay is $877.00 per month (Eddie's retired pay multiplier of .3125 (12.5 years multiplied by 2.5%) multiplied by his retired pay base ($2,808.60)).[6] In other words, if Eddie had retired when the parties divorced, his monthly retired gross pay would have been $877.00. As discussed above, Diana's community interest in Eddie's military retirement benefits is 50 percent. This interest should be applied to Eddie's hypothetical retired gross pay of $877.00. Accordingly, Diana's award is $437.50 per month.

---

[5] To determine a member's years of service, each full month of service that is in addition to the number of full years creditable to the member shall be credited as 1/12 of a year; and any remaining fractional part of a month shall be disregarded. 10 U.S.C.A. § 1405.

[6] Because Eddie's hypothetical gross retirement pay is not a multiple of $1, it is rounded down to the next lower multiple of $1. 10 U.S.C.A. § 1412 (West 2014).

10

Diana asserts Eddie's hypothetical gross retired pay is his final basic pay of $2,808.60. Thus, she argues applying the *Berry* formula entitles her to $1,404.03 (50 percent of $2,808.60) per month. But Diana is incorrect. Eddie's hypothetical gross retired pay must be calculated in accordance with USFSPA. Accordingly, Diana is not entitled to half of $2,808.60.

Eddie agrees his hypothetical gross retired pay must be calculated in accordance with USFSPA. He claims, however, his retired pay multiplier must be further reduced from 31.25 percent to 23.75 percent as required by federal law to account "for the 90 months that [he] was short of the minimum 240 needed for retirement eligibility." The federal law to which Eddie cites is the Temporary Early Retirement Authority (TERA), enacted in 1992 and designed to "provide the Secretary of Defense a temporary additional force management tool with which to effect the drawdown of military forces through 1995."[7] National Defense Authorization Act for Fiscal Year 1993, Pub.L. No. 102-484, div. D, tit. XLIV, § 4403(a), 106 Stat. 2315, 2702 (1992) (codified at 10 U.S.C.A. § 1293 note). TERA, among other things, authorized the Secretaries of the military branches to allow service members with more than fifteen but less than twenty years of total active duty service to apply for early retirement. *See id.* at § 4403(b). In pertinent part, the statute provided that:

> (e) Computation of Retired Pay. Retired or retainer pay of a member retired (or transferred to the Fleet Reserve or Fleet Marine Corps Reserve) under a provision of title 10, United States Code, by reason of eligibility pursuant to subsection (b) shall be reduced by 1/12th of 1 percent for each full month by which the number of months of active service of the member are less than 240 as of the date of the member's retirement (or transfer to the Fleet Reserve or Fleet Marine Corps Reserve).

---

[7] The "active force drawdown period" was in effect from the Act's enactment until December 31, 2001. *See* Departments of Defense and Energy Appropriations, Pub.L. No. 106-398 § 571(a)(2)(codified at note 10 U.S.C.A. § 1293).

11

*Id.* at § 4403(e). But TERA is inapplicable for two reasons. First, it was not in effect on September 14, 1989, the date of Eddie's hypothetical retirement. Second, even if TERA were in effect, Eddie would have been ineligible for early retirement because he had fewer than fifteen years of service.

### *Disposable Retired Pay*

Our discussion, however, does not end here. In order for an award to be enforceable under USFSPA, the award must be expressed either as a fixed dollar amount or as a percentage of *disposable retired pay* under 10 U.S.C.A. § 1408(a)(2)(C).[8] A percentage award is preferable because it protects the non-member spouse's interest in cost of living allowances. *See Caracciolo v. Caracciolo*, 251 S.W.3d 568, 573 n.3 (Tex.App.--San Antonio 2007, no pet.). Here, the divorce decree makes clear that Diana's one-half interest "includes any future costs of living or other benefits which are not derived as a result of [Eddie's] future services . . . ."[9] Obeying the decree's mandate, we will convert Diana's award to a percentage of Eddie's actual disposable

---

[8] "Disposable retired pay" is defined as the total monthly retired pay to which a member is entitled less certain amounts as applicable. 10 U.S.C.A. § 1408(a)(4).

[9] A divorce court may award the non-member spouse her share of any post-divorce cost-of-living allowance in the retirement benefit. *Limbaugh v. Limbaugh*, 71 S.W.3d 1, 16 n.12 (Tex.App.--Waco 2002, no pet.). We note, however, that Diana did not seek an award of post-divorce cost-of-living allowances in her petition for clarification and enforcement, and there is no indication in the record that the issue was tried by consent or that Diana introduced any evidence to support the award of post-divorce cost-of-living allowances. It is well-settled that a trial court is without power to grant relief to a party in the absence of pleadings to support that relief. *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983).

Notwithstanding the above, Diana is not without recourse. According to DFAS:

> [U]nless the court order directs otherwise, we will apply retired pay cost-of-living-allowances (COLAs) to the hypothetical retired pay amount up to the member's actual retirement date to find a 'present value' of the hypothetical retired pay as of the member's actual retirement date. The addition of the COLAs does not result in the former spouse benefiting from the member's additional service time or promotions after the hypothetical retirement date. It simply provides the former spouse with the COLA amount he or she would have received had the member actually become eligible to receive retired pay on the hypothetical retirement date.

*Guidance on Dividing Military Retired Pay*, Garnishment Operations, Defense Finance and Accounting Service 14, Revised Jan. 29 2012 (available at http://www.dfas.mil/garnishment/usfspa/attorneyinstructions.html).

retired pay.

Converting Diana's award requires us to multiply the percentage awarded to her by a fraction, the numerator of which is Eddie's hypothetical gross retired pay and the denominator of which is Eddie's actual gross retired pay. *See Guidance on Dividing Military Retired Pay*, Garnishment Operations, Defense Finance and Accounting Service 15, Revised Jan. 29 2012 (available at http://www.dfas.mil/garnishment/usfspa/attorneyinstructions.html). Eddie's hypothetical retired gross pay is $877.00, and his retired gross pay at retirement was $7,719.00. Applying the formula to these numbers yields:

$$[50\%] \times \frac{\$877.00}{\$7,719.00} = [5.68078766679622\%]$$

Thus, Diana is entitled to 5.68078766679622 percent of Eddie's disposable retired pay.

In purporting to clarify that Diana is entitled to 4.096 percent of Eddie's "Disposable Military Retired Pay" under the divorce decree, the trial court failed to give effect to the decree's unambiguous language and, in doing so, radically altered Diana's award. In essence, the trial court's clarification order impermissible modifies the divorce decree. We therefore conclude the trial court abused its discretion.

In light of the foregoing, Diana's sole issue is sustained, in part, and overruled, in part, and Eddie's second cross-issue is sustained, in part, and overruled, in part.

### ARREARAGE JUDGMENT

In his third cross-issue, Eddie contends the trial court erred in awarding Diana $9,877.54 in arrearages.[10] We agree. But he also claims "[a]pplication of [his] proferred calculations, and

---

[10] It is clear that the trial court enforced the divorce decree by awarding Diana a money judgment pursuant to Section 9.010(b) of the Family Code. This section provides that: "If a party did not receive payments of money as awarded

13

proper credits for monies already paid to Diana, results in an arrearage award of zero dollars." We disagree.

Eddie retired on or about March 1, 2009. The trial court held the *de novo* hearing on March 16, 2011 but did not render judgment until July 13, 2012. By our calculations, arrearages accrued from March 2009 to July 2012. Based on the correct valuation of Diana's monthly award, the total amount of arrearages up to the date of judgment is $17,937.50 ($437.50 multiplied by 41 months). Eddie, however, should receive credit for $2,958.46 in payments made to and accepted by Diana.[11] Accordingly, Diana is entitled to $14,979.04 in arrearages, plus pre- and post-judgment interest.[12]

Eddie's third cross-issue is sustained, in part, and overruled, in part.

## ATTORNEY'S FEES

In his fourth and final cross-issue, Eddie maintains the trial court should have awarded him attorney's fees and costs pursuant to Section 9.014 of the Family Code because he was the prevailing party.[13] According to Eddie, he was the prevailing party because the "judgment, while

---

in the decree of divorce or annulment, the court may render judgment against a defaulting party for the amount of unpaid payments to which the party is entitled." TEX.FAM.CODE ANN. § 9.010(b)(West 2006).

[11] Eddie claims he had paid Diana $3,227.42 by the time the trial court presided over the *de novo* hearing. The record indicates Diana accepted and deposited checks worth $2,958.46. The record also indicates Eddie sent Diana two checks dated January 31, 2011 and February 28, 2011, each in the amount of $134.48. The record, however, does not indicate Diana accepted and deposited these checks.

[12] Because Diana sought pre- and post-judgment interest as an element of damages, she is entitled to recover pre- and post-judgment interest. *DeGroot v. DeGroot*, 369 S.W.3d 918, 926-27 (Tex.App.--Dallas 2012, no pet.).

[13] Section 9.014 provides that:

> The court may award reasonable attorney's fees in a proceeding under this subchapter. The court may order the attorney's fees to be paid directly to the attorney, who may enforce the order for fees in the attorney's own name by any means available for the enforcement of a judgment for debt.

TEX.FAM.CODE ANN. § 9.014 (West Supp. 2014). As one appeals court has observed, Section 9.014 does not require that the trial court find a party as the prevailing party to award attorney's fees under that statute. *In re S.E.C.*, 2009

14

inaccurate and incomprehensible, was generally in favor of [him]." We disagree.

A prevailing party is one who is vindicated by the judgment rendered on the main issue or issues even if not to the extent of his or her original contentions. *See In re S.E.C.*, No. 05-08-00781-CR, 2009 WL 3353624, at *3 (Tex.App.--Dallas Oct. 20, 2009, no pet.)(mem. op.); *Hawkins v. Ehler*, 100 S.W.3d 534, 544 (Tex.App.--Fort Worth 2003, no pet.). In this case, there were two main issues litigated at trial. The first issue was the percentage or amount of Eddie's military retired pay to which Diana is entitled. Although both parties advanced wildly opposing figures, the trial court accepted neither in rendering its judgment awarding Diana 4.096 percent of Eddie's "Disposable Military Retired Pay." Our conclusion that Diana is entitled to 5.68078766679622 percent rather than 1.7421 percent, as urged by Eddie, vindicates the judgment rendered in Diana's favor. Hence, Diana prevailed on this issue. The second issue was the amount, if any, of arrearages. The trial court found in favor of Diana on that issue, awarding her $9,877.54. On appeal, we have concluded that Diana is entitled to an even larger award. Because the trial court's judgment vindicates Diana on this issue, she prevailed on it.

In sum, Diana is the prevailing party on both issues. Because Eddie was—and is—not the prevailing party, the trial court did not abuse its discretion in failing to award him attorney's fees under Section 9.014.[14] *See In re S.E.C.*, 2009 WL 3353624, at *3; *Hawkins*, 100 S.W.3d at 545.

Eddie's fourth cross-issue is overruled.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

---

WL 3353624, at *1. "Rather, by its express language, the statute's only requirements are that the award be 'reasonable' and in connection with a proceeding to enforce a decree of divorce or annulment providing for a division of property." *Id.*

[14] We review a trial court's decision to grant or deny attorney's fees under Section 9.014 for an abuse of discretion. *In re S.E.C.*, 2009 WL 3353624, at *1; *de la Garza v. de la Garza*, 185 S.W.3d 924, 930-31 (Tex.App.--Dallas 2006, no pet.).

In his first-cross issue, Eddie argues the trial court committed reversible error by failing to make the requested findings of fact and conclusions of law. As a general rule, a trial court has a mandatory duty to issue findings of fact and conclusions of law when properly requested, and the failure to issue them is harmful if an appellant is prevented from properly presenting a case on appeal. *See* TEX.R.CIV.P. 296, 297; *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996). Eddie claims he was harmed because he is "left to guess as to which [of the multiple] theories and defenses the trial court relied upon in rendering its decision." But Eddie does not want us to abate the appeal and order the trial court to issue the missing findings and conclusions. Instead, he maintains "justice will be best served by this Court determining the correct judgment the trial court should have entered based on evidence introduced at trial and acting accordingly." This is precisely what we have done.

Eddie's first-cross issue is overruled.

## CONCLUSION

We reverse the portions of the trial court's clarification order awarding Diana 4.096 percent of Eddie's disposable retired pay and $9,877.54 in arrearages. We render judgment awarding Diana 5.68078766679622 percent of Eddie's disposable retired pay and $14,979.04 in arrearages. We remand to the trial court to determine and award pre- and post-judgment interest. The trial court's judgment is otherwise affirmed.


November 14, 2014

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J. Not Participating

16