

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

### No. 07-24-00231-CV

---

**IN THE MATTER OF THE MARRIAGE OF JULIE D. LANE AND TROY LANE AND IN THE INTEREST OF T.J.L., B.T.L., B.J.L., AND C.K.L., MINOR CHILDREN**

---

On Appeal from County Court at Law Number 3
Lubbock County, Texas
Trial Court No. DC-2023-FM-0418, Honorable Benjamin A. Webb, Presiding

---

August 11, 2025

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Since the early days of the Republic of Texas, Texas has carefully drawn a line between the separate and community property of spouses to preserve the distinctions between and the integrity of the two classes of property. Any judicial divestiture of separate property would essentially disregard the constitutionally mandated distinction. At times pertinent to this action, the Texas Constitution has provided:

> All property, both real and personal, of a spouse owned or claimed before marriage, and that acquired afterward by gift, devise or descent, shall be the separate property of that spouse . . . .

TEX. CONST. art. XVI, § 15. In interpreting this provision, the Court in *Arnold v. Leonard,* 114 Tex. 535, 273 S.W. 799 (1925), ruled the Constitution contained the exclusive definition of separate property and the Legislature could neither alter nor enlarge upon it. Simply put, the Texas Constitution does not allow a court to divest a spouse of his or her separate property.

Yet in this case—despite a mediated settlement agreement, a signed divorce decree, and everyone agreeing that the property in question was separate—the wife argues husband should be divested of his separate property. The reason? The wife claims the decree only awarded him separate property if it was physically located in her household. That argument doesn't just strain logic; it breaks it.

Appellant, Julie D. Lane, appeals from the trial court's *Enforcement Order* in favor of Appellee, Troy Lane. By her original and reply brief, she maintains (1) the trial court did not have subject matter jurisdiction to substantively modify the *Agreed Decree of Divorce*; (2) alternatively, the trial court erred in finding the *Agreed Decree of Divorce* was ambiguous; (3) alternatively, assuming the *Agreed Decree of Divorce* was ambiguous, the trial court abused its discretion by substantively changing the division of property under the guise of interpretation, and (4) the issue of her attorney's fees should be remanded to the trial court for reconsideration if this Court reverses the *Enforcement Order*. We affirm.

## THE PROBLEM

This case boils down to a fundamental misreading of the divorce decree—one that cannot be squared with contract construction principles or the Texas Constitution's express prohibition against divesting a spouse of separate property.

Troy and Julie entered into a mediated settlement agreement (MSA), which was later incorporated into an agreed final decree of divorce.[1]  The decree awarded Julie household items and cash in her control, but specifically carved out—"SAVE AND EXCEPT"—all funds received by Troy from the sale of his separate property interest in Utility Contractors of America (UCA).  Later, in a separate section titled "Confirmation of Separate Property," the decree unequivocally stated that all funds from the sale of UCA were confirmed as Troy's separate property.

Despite this, Julie now claims she owes Troy nothing—because the money was not physically in her possession at the time of the decree.  In her view, unless she had the proceeds in a coffee can under the bed, paragraph P-4 (awarding her "all sums of cash in her possession or subject to her control") gave her the right to keep them.  But her position not only disregards the plain text of the decree, it renders the earlier "SAVE AND EXCEPT" clause meaningless.

Under settled Texas law, courts construe judgments and agreed decrees like any other written contract. *McKnight v. Trogdon-McKnight*, 132 S.W.3d 126, 130 (Tex. App.—

---

[1] Despite the MSA, the parties disagreed on various issues at a hearing on a motion for entry of the decree.  The trial court ruled "there is no material disagreement regarding terms of the decree that would require arbitration . . . ."  Although the decree is entitled "Agreed Decree of Divorce," it is not signed by the parties and is approved as to form only by their counsel.  However, under the title "Appearances," the decree recites that Julie and Troy both "agreed to the terms."

Houston [14th Dist.] 2004, no pet.). Earlier terms control over later conflicting ones, and all provisions must be harmonized to give meaning to the whole. *Wal-Mart Stores*, *Inc. v. Xerox State & Local Sols., Inc.*, 663 S.W.3d 569, 588 n.89 (Tex. 2023). More importantly, under Article XVI, Section 15 of the Texas Constitution, courts have no authority to divest a spouse of separate property. Julie's interpretation—if adopted— would do exactly that.

## BACKGROUND

The parties married in 2002 and have four children. In December 2020, Troy sold his business interest in UCA, a company he had an interest in prior to the marriage. He worked at UCA for over three decades. He received a payment of $1,000,000 and four other deposits totaling $1,806.494.70. The funds from the sale were deposited in various accounts and some of the funds were spent. On May 6, 2021, Julie filed for divorce and withdrew a significant portion of the funds from the parties' accounts to support her children. She repaid some but not all of the funds. Pursuant to the MSA dated May 16, 2022, the parties entered into an *Agreed Decree of Divorce* on December 21, 2022.

The **Division of Marital Estate** portion of the decree awarded property as follows:

Property to [Julie]

> IT IS ORDERED AND DECREED that [Julie] is awarded the following as her sole and separate property and [Troy] is divested of all right, title, interest, and claims in and to that property:

> P-1. All household furniture, furnishing, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the wife or subject to her sole control, *SAVE AND EXCEPT the following items described by* [*Troy's*] *separate property*:

\*\*\*

4

> 8. *All funds received by* [*Troy*] *from the sale of his separate property interest in Utility Contractors of America.*

***

> P-4. All sums of cash in the possession of wife or subject to her sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in [Julie's] sole name or from which [Julie] has the sole right to withdraw funds or which are subject to [Julie's] sole control.

***

> P-10. The income tax refund from the parties' 2020 federal income taxes in the amount of $135,077.00.

> P-11. The sum of $200,000.00 from [Troy] on or before the date of entry of the Agreed Decree of Divorce.

(Emphasis added).

Under the heading "Property to [Troy]," there was no recitation of the funds awarded from the sale of UCA as his separate property. However, following the portion of the decree dividing the marital estate and apportioning liabilities, is the following recital:

### Confirmation of Separate Property

> IT IS ORDERED AND DECREED that the following described property is *confirmed as the separate property of* [*Troy*]:

***

> 8. All funds received by [Troy] from the sale of his separate property interest in Utility Contractors of America.

The decree was not appealed and became final.

A few months after the decree was entered, on March 1, 2023, Troy petitioned for enforcement of the property division alleging Julie had not complied with the terms of the

5

decree by failing to relinquish possession of his separate property.[2]  He also sought a money judgment and a clarifying order.  Alternatively, he alleged an ambiguity in the decree due to Julie's allegation that paragraph P-4 of the decree awarding her "all sums of cash" invalidated the earlier "SAVE AND EXCEPT" clause in paragraph P-1 which awarded him all funds from the sale of UCA as his separate property.

Julie countered with her own petition to enforce the property division by contempt and also sought a money judgment.  Among other claims, she alleged Troy had failed to turn over the 2020 income tax refund of $135,077.00 or pay the $200,000 agreed to in the decree.

Presented with competing motions for enforcement, the trial court held a hearing. Julie invoked section 9.007 of the Family Code and argued the trial court was without jurisdiction to modify or alter the terms of the decree after it became final.  The trial court disagreed and continued with the hearing.

Troy testified during cross-examination that the exact amount of funds was not specified in the MSA or decree because "[i]t was a known fact" to both he and Julie.[3] According to the MSA and the agreed decree, Troy was to receive "all" of the proceeds from the sale of UCA.  When questioned about paragraph P-4 which awarded Julie all sums of cash in her possession or subject to her control, Troy responded "[s]ave and except all funds from the sale of my separate property" as provided in paragraph P-1(8).

_____

[2] Troy also failed to comply with the decree which prompted Julie's motion for contempt and enforcement.

[3] During her testimony, Julie was asked if she knew the amount of money Troy received from the sale and she responded, "$1 million."  She testified the family had a conversation about it during Thanksgiving and "[she] saw the money in the bank."

Troy acknowledged he had not paid Julie the $200,000 agreed to and claimed he had not provided the tax refund because it was not in his possession.[4] Troy testified he was "totally willing" to abide by the terms of the MSA and the decree once he received his funds from the sale of UCA but expressed that Julie was never entitled to all the funds from the sale of UCA. His motivation for filing the enforcement proceeding was to receive what remained of his separate property funds.

The sale of UCA was accomplished in five separate payments totaling $1,806,494.70 as follows:

| | |
|---|---|
| December 18, 2020 | $ 22,600.00 |
| December 30, 2020 | $1,000,000.00 |
| December 31, 2020 | $ 100,500.00 |
| December 31, 2020 | $ 500,409.60 |
| March 22, 2021 | $ 132,985.10 |

Troy presented expert testimony and documentation from Robert Bailes, a certified public accountant. Bailes testified he tracked the proceeds related to the sale of UCA using a standard community-out-first methodology. He reviewed the five different deposits which were deposited in various bank accounts, including a joint account used to pay normal living expenses.[5] He confirmed Julie withdrew some of the funds and repaid some but not all of the amounts withdrawn. His examination revealed Troy was entitled to $482,398.53 of the original $1,806,494.70 of his separate property funds from the sale of

---

[4] It was disclosed that Troy's counsel was in possession of the check and he tendered it to the trial court.

[5] The deposits were provided by an attorney in the firm representing Troy. Bailes conducted his accounting with the assumption they were to be treated as Troy's separate property from the sale of UCA. Counsel for Julie vehemently objected to any assumptions from an attorney in the firm representing Troy. On appeal, however, she does not present a sufficiency challenge to the amount she was ordered to pay Troy.

UCA. Over a lengthy cross-examination, Bailes explained how he reached his conclusion.

Several months after the hearing, the trial court rendered the enforcement order. The trial court found it had jurisdiction over the case. Troy was awarded a money judgment for $482,398.53 as his separate property. The trial court also found Troy failed to timely deliver to Julie the 2020 income tax refund for $135,077.00 and the $200,000.00 agreed to in the decree. Julie was awarded credits for those amounts and after an offset, was ordered to pay the remaining balance of $147,321.53 to Troy.

The trial court entered *Findings of Fact and Conclusions of Law.* In addition to findings related to the monetary awards and credits, the trial court found the construction of the agreed decree was in accordance with the intent of the parties at the time of its formation. The trial court concluded the decree "contained a patent ambiguity."

**ISSUE ONE—JURISDICTION**

Julie maintains that on the face of the record the trial court lacked subject matter jurisdiction to substantively alter the terms of the agreed decree and Troy's enforcement action amounted to a collateral attack on a final judgment. She also asserts res judicata barred relitigation of separate property. We disagree.

A trial court's ruling on a post-divorce motion for enforcement is reviewed for abuse of discretion. *Douglas v. Douglas*, 454 S.W.3d 591, 595 (Tex. App.—El Paso 2014, no pet.) (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam)); *In re Manor*, No. 07-16-00143-CV, 2018 Tex. App. LEXIS 2068, at *3 (Tex. App.—Amarillo March 21, 2018, pet. denied) (mem. op.). A trial court abuses its discretion if it acts

8

arbitrarily or unreasonably or if it does not analyze or apply the law properly. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). A trial court's subject matter jurisdiction, however, is reviewed de novo. *Marshall v. Priess*, 99 S.W.3d 150, 156 (Tex. App.—Houston [14th Dist.] 2002, no pet.). A court that renders a divorce decree retains jurisdiction to clarify and enforce the property division within that decree. TEX. FAM. CODE ANN. §§ 9.002, 9.008; *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011). However, section 9.007 of the Family Code provides as follows:

> (a) A court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment. An order to enforce the division is limited to an order to assist in the implementation of or to clarify the prior order and may not alter or change the substantive division of property.

> (b) An order under this section that amends, modifies, alters, or changes the actual, substantive division of property made or approved in a final decree of divorce or annulment is beyond the power of the divorce court and is unenforceable.

TEX. FAM. CODE ANN. § 9.007. A trial court may specify more precisely the manner of effecting the property division previously made as long as the substantive division of property is not altered or changed. TEX. FAM. CODE ANN. § 9.006; *Marshall*, 99 S.W.3d at 156. When the original form of the division of property is not specific enough to be enforceable by contempt, the trial court may render a clarifying order setting forth the specific terms to enforce compliance. TEX. FAM. CODE ANN. § 9.008(b).

## ANALYSIS

The agreed decree was entered on December 21, 2022. Troy did not file a post-decree motion, nor did he appeal the decree. Thus, the trial court's plenary power expired

9

thirty days later on January 20, 2023. According to Julie, Troy's first petition for enforcement filed on March 1, 2023, did not invoke the trial court's jurisdiction. She asserts it was an attempt to unlawfully modify the terms of the agreed decree disguised as an enforcement or clarification action.

Julie asserts Troy's failure to appeal the decree during the trial court's period of plenary power resulted in the decree becoming final and precluded his enforcement action. However, during the time in which to appeal, Troy believed the MSA and agreed decree resolved all issues and there was no justiciable controversy regarding the division of property. A case becomes moot when the controversy ceases to exist. *Williams v. Huff*, 52 S.W.3d 171, 184 (Tex. 2001). Not until Julie failed to comply with the provision of the decree awarding him all funds from the sale of UCA as his separate property, did Troy pursue a post-divorce enforcement remedy.

At the time of the sale of UCA, the parties were married and the funds were commingled in joint accounts. Commingling created a presumption the funds were community property. TEX. FAM. CODE ANN. § 3.003. Separate property, however, retains its character despite a series of exchanges if the spouse asserting separate ownership can overcome the presumption. *Kelly v. Kelly*, 634 S.W.3d 335, 355 (Tex. App.—Houston [1st Dist.] 2021, no pet.). Commingling does not alter the character of separate property when it can be traced to assist the trial court in accurately determining the interests of each party. *Sloan v. Sloan*, No. 02-23-00361-CV, 2024 Tex. App. LEXIS 7441, at *16–17 (Tex. App.—Fort Worth Oct. 17, 2024, no pet.) (mem. op.).

According to forensic accounting, at the time the parties entered into the MSA, the amount of Troy's separate property funds remaining of the $1,806,494.70 after the parties

10

spent a significant portion was $482,398.53.[6]   Julie does not present a sufficiency challenge to that amount or to the separate character of the funds.   The community presumption was rebutted by the parties' agreement in the MSA and decree that "all" funds from the sale of UCA belonged to Troy as his separate property.   Expert testimony identified the character of the separate property from the date of inception to the effective date of the MSA, albeit the exact amount was not fully identified until after Troy filed his enforcement action.   The evidence did not defy resegregation and identification.   *Kelly*, 634 S.W.3d at 335.   The delayed accounting of the funds did not alter or change the character of the property.   Here, the trial court's enforcement order more precisely specified the manner of carrying out the previously ordered property division and did not substantively alter the division of the property.   *McPherren v. McPherren*, 967 S.W.2d 485, 490 (Tex. App.—El Paso 1998, no pet.).

Troy's enforcement action was not a relitigation of the agreed decree.   He was not attempting to collaterally attack the decree by obtaining an order that modified the property division.   He merely sought clarification and enforcement of the agreed-to property division.   The trial court retained jurisdiction to "more precisely specify" the division of that property.   *Marshall*, 99 S.W.3d at 156.   Where, as here, the original form of the property division was not specific enough to be enforceable by contempt, the court had authority to clarify the specific terms to enforce compliance with the original division of property.   *Riley v. Riley*, No. 03-21-00051-CV, 2022 Tex. App. LEXIS 9543, at *9 (Tex. App.—Austin Dec. 29, 2022, no pet.) (mem. op.).

---

[6] The better practice would have been to specify the exact amount at the time the MSA was executed, but the parties agreed "all" funds from the sale of UCA were Troy's separate property and Julie acknowledged that fact during her testimony.

11

Julie maintains the trial court altered the division of property by ignoring the plain language in paragraph P-4 awarding her "all sums of cash in the possession of wife or subject to her sole control." She argues the language in paragraph P-4 controlled over the "Save and Except" clause in paragraph P-1(8) carving out funds Troy received from the sale of UCA. She posits that because the language in that clause was not repeated in paragraph P-4, Troy was not entitled to the funds from the sale of UCA.[7] She disregards the rules of construction applicable to ordinary contracts which apply to an agreed decree. *Murray v. Murray*, 276 S.W.3d 138, 144 (Tex. App.—Fort Worth 2008, pet. dism'd). A reviewing court examines an entire document in an effort to harmonize and give effect to all provisions so that none will be rendered meaningless. *Shultz v. Franklin Credit Mgmt. Corp.*, No. 07-96-00396-CV, 1997 Tex. App. LEXIS 2640, at *13 (Tex. App.—Amarillo May 19, 1997, no writ) (mem. op.). No single provision should be given controlling effect and terms stated earlier in an agreement must be favored over subsequent terms. *Id.* In reviewing the language of a divorce decree, a court applies the general rules applicable to construction of judgments and construes the decree as a whole to harmonize and give effect to the entirety of the document. *Hagen v. Hagen*, 282 S.W.3d 899, 901 (Tex. 2009).

In the underlying case, the "Save and Except" clause appears in paragraph P-1(8), well before paragraph P-4's award to Julie. Thus, under the rules for contract construction, the trial court correctly found the "Save and Except" clause to be the controlling provision. Julie's interpretation renders the clause meaningless. A review of

---

[7] When Troy was asked whether the "Save and Except" clause was an award of property to him, Troy's counsel objected, and the objection was sustained. The court added "Court's position is that establishes those items as his separate property with the save-and-except language . . . ." "It's a semantics conclusion."

the entire decree does not create uncertainty or doubt regarding Troy's entitlement to the funds from the sale of UCA. The trial court's order harmonized all provisions involving the division of property. The position advanced by Julie would require the trial court to divest Troy of his separate property—an action prohibited by the Texas Constitution. TEX. CONST. art. XVI, § 15; *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 142 (Tex. 1977). A trial court's discretion in dividing property does not extend to taking separate property from one spouse and awarding it to the other spouse. *Hale v. Hale*, No. 14-24-00302-CV, 2025 Tex. App. LEXIS 297, at *12 (Tex. App.—Houston [14th Dist.] Jan. 23, 2025, no pet.) (mem. op.).

As noted *infra*, both parties intended the funds from the sale of UCA to be Troy's separate property from the time the MSA was executed. Julie freely signed the MSA. It provided that "all" funds from the sale of UCA were Troy's separate property. Paragraph P-4 did not give her control of or a right to possession of those funds. She testified she knew how much Troy received from the sale of UCA. They discussed it during Thanksgiving dinner, and she knew the funds were in their bank accounts. Troy testified the amount of the funds was "a known fact" to both of them. Placement in the decree of the "Save and Except" clause in a paragraph which awarded Julie household items did not alter the characterization of Troy's separate property. The trial court's enforcement order did not substantively change or alter the character of the property division; it only clarified in more specific terms the division previously agreed to by the parties. The order was limited to assisting in implementation and clarification of the agreed decree and did not run afoul of section 9.007 of the Family Code.

13

Ultimately, Julie agreed to the division of property awarding Troy "all" funds from the sale of UCA. Troy's motion for enforcement was not an attempt to change the character of any property awarded in the decree. He merely sought clarification and enforcement of terms previously agreed to by Julie.

The trial court retained jurisdiction to rule on Troy's motion for enforcement. We conclude Julie has not demonstrated the trial court lacked subject matter jurisdiction or that it abused its discretion in rendering the enforcement order in favor of Troy. Issue one is overruled.

**ISSUE TWO—AMBIGUITY OF AGREED DECREE OF DIVORCE**

Alternatively, Julie asserts the trial court erred in concluding the decree contained a patent ambiguity. Relying on *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 764 (Tex. 2018), she contends the trial court impermissibly allowed extraneous evidence of the parties' intentions to create an ambiguity. We agree the trial court erred in concluding the decree contained a patent ambiguity but disagree that extrinsic evidence of the parties' intentions was admitted. Despite the error, Julie was not harmed.

A trial court's determination that a contract or court decree is ambiguous is a question of law which we review de novo. *Farmers Grp., Inc. v. Geter*, 620 S.W.3d 702, 709 (Tex. 2021). Terms are given their plain, ordinary, and generally accepted meaning unless the document shows the parties used them in a technical or different sense. *Id.* (citation omitted). If a decree is unambiguous, a reviewing court must adhere to the literal language used. *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003).

A judgment or decree is ambiguous only if it is reasonably susceptible to more than one meaning. A patent ambiguity is evident on the face of the document. *URI, Inc.*, 543 S.W.3d at 765. A latent ambiguity arises when a facially unambiguous document is applied to the subject matter and an ambiguity appears by reason of some collateral matter. *Id.; Jacobs v. BancPlus Mortg. Corp.*, No. 07-97-00278-CV, 1998 Tex. App. LEXIS 2463, at *11 (Tex. App.—Amarillo April 22, 1998, pet. denied) (mem. op.). Extrinsic evidence may be necessary for interpretation between two possible meanings. *Jacobs*, 1998 Tex. App. LEXIS 2463, at *11. But extrinsic evidence cannot be used to show the intent or motive of the parties. *See URI, Inc.*, 543 S.W.3d at 767. *See also Clear Lake City Water Auth. v. Friendswood Dev. Co. Ltd.*, 256 S.W.3d 735, 752 n.23 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd) (providing that unobjected-to parol evidence is incompetent and has no probative value).

In its first conclusion of law, the trial court recited "[t]he *Agreed Final Decree of Divorce* contained a patent ambiguity." Although the trial court did not specify the ambiguity, Troy asserts "the ambiguity presents itself when determining who is entitled to possession of funds from the sale of [UCA] that happen to be in possession of Julie or subject to her control." Troy is referring to Paragraphs P-1(8) and P-4. However, neither of those provisions are subject to multiple reasonable interpretations. The language is facially unambiguous; rather, the dispute centered on the placement of the "Save and Except" clause under household items awarded to Julie. She maintains the decree contains no "award" to Troy of the funds from UCA and asserts the *Confirmation of Separate Property* clause is not an award of separate property to Troy. The confirmation paragraph specifically recites "IT IS ORDERED AND DECREED" that all funds received

15

from the sale of UCA are Troy's separate property. Such decretal language is the "heart of the judgment" and grants or denies the relief sought. *Anh Phan v. CL Invs.*, No. 01-20-00551-CV, 2022 Tex. App. LEXIS 346, at *9 (Tex. App.—Houston [1st Dist.] Jan. 20, 2022, pet. denied) (mem. op.).

Julie's interpretation ignores the parties' agreement that all funds from the sale of UCA were Troy's separate property. It would also unlawfully divest Troy of his separate property. She is not entitled to Troy's separate property by default.

The trial court erred in concluding the placement of the "Save and Except" clause created an ambiguity. Despite the error, Julie was not harmed. The evidence admitted at trial was not extrinsic evidence intended to alter or change the terms of the decree.[8] Rather, it was evidence related to the competing motions for enforcement of the decree. *See* TEX. R. APP. P. 44.1(a)(1) (providing that an error of law does not require reversal unless it probably caused the rendition of an improper judgment).

Julie further argues the trial court erroneously excluded testimony of her intent at the time of formation of the MSA which was that she had no obligation to pay Troy $482,398.53 pursuant to the language in paragraph P-1.[9] She did not dispute that Troy's interest in UCA predated their marriage but claimed that because he had not determined the amount of funds from the sale of UCA when they executed the MSA, and because the "Save and Except" clause was placed in paragraph P-1(8), he should not have been

---

[8] The parol evidence rule prohibits presentation of extrinsic evidence to vary or contradict the terms of an unambiguous document. *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 283 (Tex. 1996).

[9] Because we found the decree was unambiguous, Julie's argument that she should have been permitted to testify regarding her intent would have violated the parol evidence rule. When asked by her counsel of her intent at the time she signed the MSA, counsel for Troy lodged a parol evidence objection which the trial court sustained, and she did not make an offer of proof.

16

awarded that amount in the enforcement order. The evidence admitted at trial was in furtherance of the motions to enforce. The decree was unambiguous and enforceable as written. We hold the trial court's error in concluding the decree contained a patent ambiguity was harmless. Issue two is overruled.

**ISSUE THREE—DID THE TRIAL COURT SUBSTANTIVELY CHANGE DIVISION OF PROPERTY?**

Julie asserts, alternatively, and assuming the agreed decree is ambiguous, that the trial court abused its discretion by substantively changing the division of property under the guise of interpretation. Because we have determined the decree is not ambiguous and the trial court did not substantively change the property division, we need not engage in any alternative analysis. Issue three is rendered moot.

**ISSUE FOUR—ATTORNEY'S FEES**

Julie requests a remand of the issue of her attorney's fees for consideration by the trial court should the enforcement order be reversed. Our disposition of issues one, two, and three renders the issue of her attorney's fees moot. Issue four is overruled.

**CONCLUSION**

The trial court's *Enforcement Order* is affirmed.

Alex Yarbrough<br>
Justice

Doss, J., concurs in the result.

17